**In re SUBPOENA TO TESTIFY BEFORE GRAND JURY DIRECTED TO CUSTODIAN OF RECORDS, University of Florida Athletic Program.**

**The Gainesville Sun Publishing Corporation, The Tribune Company, Campus Communications, Inc., and The University of Florida Chapter of Sigma Delta Chi, Intervenors-Appellants.**

No. 88–3807.

United States Court of Appeals, Eleventh Circuit.

Feb. 6, 1989.

James G. Feiber, Jr., Salter, Feiber & Yenser, Gainesville, Fla., Deborah R. Linfield, The New York Times Co., New York City, for Gainesville Sun.

Carol Jean LoCicero, Holland & Knight, Tampa, Fla., for The Tribune Co., Campus Communications, University of Florida, etc.

Kenneth W. Sukhia, Lyndia Barrett, Asst. U.S. Attys., Tallahassee, Fla., for U.S.

Pamela J. Bernard, General Counsel, University of Florida, James S. Quincey, Gainesville, Fla., for other respondents.

Before JOHNSON and EDMONDSON, Circuit Judges, and NICHOLS *, Senior Circuit Judge.

* Honorable Philip Nichols, Jr., Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

JOHNSON, Circuit Judge:

This appeal involves a challenge to the district court's issuance of a closure order restraining counsel and parties from disclosing the content of pleadings and memoranda filed in connection with a continuing grand jury investigation. We affirm.

## I. FACTS

On July 22, 1988, a federal grand jury subpoena was served on the Custodian of Records of the University of Florida Athletic Program to release certain University records. The University resisted compliance with the subpoena. During the course of the proceedings to determine whether the University had to comply with the subpoena, the University felt itself compelled by the Florida Public Records Law, F.S.A. § 119.01 *et seq.*, to release to the press copies of motions and other documents filed with the district court in connection with this subpoena. Various newspapers published portions of these motions and reported on the information contained in the documents.

Because of the publication of sensitive information, the United States filed a motion for closure of the grand jury proceedings. On August 26, 1988, the district court issued a closure order that provides in part: "the parties, counsel thereto and the Clerk of the Court are instructed not to reveal any information contained in such pleadings or memoranda, or any other information relating to the subject Grand Jury investigation, including but not limited to any documents produced pursuant to a Grand Jury subpoena, or testimony or other information obtained as a result of the subject Grand Jury investigation."

Four newspapers moved to intervene,[1] seeking reconsideration, clarification, or modification of the district court's closure order restricting access to the grand jury proceedings. On September 23, 1988, the district court simultaneously granted the motion to intervene and denied the motion to reconsider, modify, or clarify its order.

It is from the September 23 order that the intervenors appeal.

## II. DISCUSSION

■ This court has jurisdiction to hear this appeal under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The order of September 23, 1988, conclusively determines a disputed question; the order resolves an issue completely separate from the merits; and the order is effectively unreviewable on appeal from a final judgment. *See In re Grand Jury Subpoena Duces Tecum*, 797 F.2d 676 (8th Cir.), *cert. dismissed*, 479 U.S. 1013, 107 S.Ct. 661, 93 L.Ed.2d 714 (1986).

■ The United States argues that the press has no standing because this case involves a grand jury proceeding and the press does not have access to such proceedings. The intervenors argue that the closure order extends beyond the scope of the grand jury proceedings to cover matters independently discoverable. The intervenors have standing to appeal the scope of the order even though they are not parties to this action. *See In re Application of Dow Jones & Co.*, 842 F.2d 603, 607 (2d Cir.1988) ("the rights of potential recipients of speech, like the news agencies, to challenge the abridgement of speech has already been decided") (citing *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976)), *cert. denied*, —— U.S. ——, 109 S.Ct. 377, 102 L.Ed.2d 365 (1988); *cf. Newman v. Graddick*, 696 F.2d 796 (11th Cir.1983).

### A. *Access to the Grand Jury Proceedings*

■ Intervenors assert that as members of the press, they have a First Amendment right of access to the grand jury proceedings. Intervenors argue that these proceedings are "criminal proceedings," and

---

1. The intervenors are The Tribune Company, Campus Communications, Inc., the University of Florida Student Chapter of Sigma Delta Chi Society of Professional Journalists, and The Gainesville Sun Publishing Company.

that therefore they have a right of access absent a compelling state interest to the contrary. *See generally Press Enterprise Co. v. Superior Court,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (press has First Amendment right to access transcript of preliminary hearing in criminal prosecution); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (plurality) (press has First Amendment right to access criminal trials).

Intervenors fail to appreciate the fundamental difference between criminal trials and grand jury proceedings. The press's right of access to criminal trials and the proceedings connected with such trials is based on at least two considerations. First, criminal prosecutions historically have been open to the public. *Richmond Newspapers, Inc.,* 448 U.S. at 573, 100 S.Ct. at 2825 (there is a "presumption of openness [which] inheres in the very nature of a criminal trial under our system of justice"). Second, an open criminal trial helps to assure the fairness of the proceedings. *Press–Enterprise Co.,* 478 U.S. at 7, 106 S.Ct. at 2740 ("one of the important means of assuring a fair trial is that the process be open to neutral observers"). Public access thus has a positive role in the functioning of the criminal prosecution process. *Id.* at 8, 106 S.Ct. at 2740.

Neither of these elements is present in assessing access to grand jury proceedings. First, grand jury proceedings are historically and presumptively secret. *See Phillips v. United States,* 843 F.2d 438, 441 (11th Cir.1988) ("Grand jury proceedings, both state and federal, have long been protected by the veil of secrecy. The secrecy of the grand jury is sacrosanct."). That secrecy has been codified in Fed.R.Crim.P. 6(e), which limits disclosure of grand jury proceedings and materials. Second, secrecy of grand jury proceedings is essential to maintaining the effectiveness of the grand jury.[2] *See Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979) ("We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."). This is in direct contrast to the advantages public access provides to criminal proceedings. *Press–Enterprise Co.,* 478 U.S. at 8–9, 106 S.Ct. at 2741 ("Although many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly. A classic example is that 'the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.' ") *(quoting Douglas Oil Co.,* 441 U.S. at 218, 99 S.Ct. at 1672.)

 This is not a case of a prior restraint of protected First Amendment activity. *See, e.g., Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) (voiding gag order on all participants in a criminal trial as prior restraint). It is the *disclosure* of grand jury materials that invokes the judicial process. In order to justify lifting the secrecy that normally surrounds the grand jury proceedings, courts must find a "particularized need" for the disclosure that outweighs the benefits of maintaining the secrecy. *United States v. Liuzzo,* 739 F.2d 541, 544 (11th Cir.1984). Even when the person requesting such disclosure has shown a particularized need for the materials, access is limited and covers *only* those materials actually needed. *Id.* at 545.

It is clear that the district court had authority to issue this closure order under Rule 6(e)(5). *See* Advisory Committee Notes to the 1983 Amendment ("Two other kinds of hearings at which information about a particular grand jury investigation

---

**2.** Grand jury secrecy: (1) prevents the escape of persons against whom indictment may be sought; (2) insures grand jury has freedom of deliberation; (3) prevents subornation of perjury or tampering with witnesses who may later appear at trial; (4) encourages full disclosure by witnesses; and (5) protects the innocent accused from publication of the fact that he has been under investigation. *United States v. Phillips,* 843 F.2d 438, 441 (11th Cir.1988) (citing *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 219 n. 10, 99 S.Ct. 1667, 1673 n. 10, 60 L.Ed.2d 156 (1979)).

might need to be discussed are those at which the question is whether to grant a grand jury witness immunity or whether to order a grand jury witness to comply fully with the terms of a subpoena directed to him."). The intervenors had no right of access to these proceedings. This order was necessary to maintain the secrecy of the grand jury investigation. Consequently, we find no abuse of discretion by the district court in issuing this order.

### B. Procedures for Ordering Grand Jury Proceedings Closed

 Intervenors claim that the district court could not have issued this closure order without first granting them a hearing and without articulating reasons for the order. A court must hold a hearing and give reasons for its closure of criminal proceedings. *See Newman v. Graddick,* 696 F.2d 796 (11th Cir.1983) (district court must disclose balance involved in closing criminal proceedings); *accord, United States v. Kooistra,* 796 F.2d 1390 (11th Cir.1986). This is because those proceedings are presumptively open, and because that openness benefits the criminal justice system itself. *See Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986). In the case of grand jury proceedings, however, the reverse is true.

The district court did hold a hearing involving the government and the University to determine whether the closure order should issue. That hearing was closed under Rule 6(e)(5). *See* Fed.R.Crim.P. 6(e)(5) ("the court shall order a hearing on matters affecting a grand jury proceeding to be closed to the extent necessary to prevent disclosure of matters occurring before a grand jury"). The intervenors *themselves* had no right to access the material disclosed or potentially disclosed at that hearing. *See United States v. Anderson,*

799 F.2d 1438, 1440 (11th Cir.1986) (public and press not entitled to hearing on whether discovery document in civil trial should be sealed absent right to view material), *cert. denied,* 480 U.S. 931, 107 S.Ct. 1567, 94 L.Ed.2d 760 (1987). Consequently, we find no error in the procedures the district court utilized in determining whether to issue the closure order.

### C. Scope of the Closure Order

 Intervenors finally argue that the district court could not order the witnesses in the grand jury proceeding to refrain from discussing the substance of their testimony with outside sources. The Advisory Committee Notes to Rule 6(e)(5) make clear that the district court had the power to close the proceedings involving the subpoena issued to the University of Florida. *See id.* ("Counsel *or others* allowed to be present at the closed hearing may be put under a protective order by the court.") (emphasis added). Although Rule 6(e) does not address directly the court's authority to restrain witnesses to grand jury proceedings from disclosing material connected to the proceedings, the district court had the power to do so pursuant to its authority to protect the integrity of the grand jury process. *See generally Levine v. United States,* 362 U.S. 610, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960); *In re Swearingen Aviation Corp.,* 486 F.Supp. 9 (D.Md.), *modified on other grounds,* 605 F.2d 125 (4th Cir.1979).

Rule 6(e)(2) does not compel a different result.[3] The Advisory Committee Notes to Rule 6(e)(2) state: "The rule does not impose any obligation of secrecy on witnesses. The practice at this point varies among the districts. The seal of secrecy on witnesses seems an unnecessary hardship and may lead to injustice if a witness is not permitted to make a disclosure to counsel or to an associate." This suggests that the

---

**3.** The full text of Rule 6(e)(2) is as follows: A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph 3(C)(ii) of this subdivision shall not disclose

matters occurring before the grand jury, except as otherwise provided in these rules. *No obligation of secrecy may be imposed on any person except in accordance with this rule.* A knowing violation of Rule 6 may be punished as a contempt of court. (emphasis added).

Rule does not *exempt* witnesses from a secrecy obligation. Rather, the Rule does not of its own force impose such an obligation. *See generally In re Grand Jury Proceedings*, 814 F.2d 61, 69 (1st Cir.1987); *In re Grand Jury Subpoena Duces Tecum*, 797 F.2d at 681.

We hold that the district court had the authority to prevent witnesses from disclosing materials prepared for or testimony given in the grand jury proceedings or related proceedings. The district court found that the order was a "compelling necessity." *See In re Grand Jury Subpoena Duces Tecum*, 797 F.2d at 681 (imposing secrecy obligation on grand jury witness upon showing of compelling necessity). If this order prevents disclosure of documents prepared and assembled independent of the grand jury proceedings, however, such as University records compiled in the ordinary course of business, it would be too broad. *See Blalock v. United States*, 844 F.2d 1546, 1551 (11th Cir.1988) (discussing Rule 6(e)(2)). We do not read the order as imposing such a sweeping obligation of secrecy on the parties and witnesses. The order only prohibits the University from disclosing materials prepared for, or statements presented in, the grand jury proceedings or proceedings connected to the grand jury investigation.

■ Naturally, in responding to requests for release of information, the University is obligated to avoid revealing the direction of the grand jury investigation. *United States v. Phillips*, 843 F.2d 438, 441 (11th Cir.1988); *In re Sealed Case*, 801 F.2d 1379 (D.C.Cir.1986). Additionally, the University may not disclose the names of individuals being investigated, or those who might be expected to testify before the grand jury, or any other secret aspect of the grand jury investigation. *Phillips*, 843 F.2d at 441; *Standley v. Department of Justice*, 835 F.2d 216 (9th Cir.1987); *see generally* Fed.R.Crim.P 6(e)(5), (6). Thus, the University may not respond to requests that would disclose protected information, such as requests for all documents prepared for, submitted to, or subpoenaed by the grand jury. Subject to the limitation

that it may not reveal any secret aspect of the grand jury proceedings, the University can disclose information presented to the grand jury, *Senate of Puerto Rico v. Department of Justice*, 823 F.2d 574, 582 (D.C.Cir.1987), including actual materials presented. *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1382 (D.C.Cir.) (en banc), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980); *see generally Blalock*, 844 F.2d at 1551.

■ The district court could have written a less restrictive order. The district court is not compelled, however, to take the least restrictive means available to protect the secrecy of the grand jury proceedings during the pendency of those proceedings. *See Blalock*, 844 F.2d at 1550 n. 5 ("The scope of judicial review is narrowest while there is an ongoing grand jury investigation. The courts' concern for grand jury secrecy and for the grand jury's law enforcement function is generally greatest during the investigative phase of grand jury proceedings.") (quoting S. Beale & W. Bryson, *Grand Jury Law & Practice* § 10:18 (1986) (citations omitted)). Consequently, this order is not overly broad.

## III. CONCLUSION

The intervenors have no right of access to grand jury proceedings under the First Amendment. The district court was not obligated to provide the intervenors with notice and an opportunity to participate in the proceedings resulting in the closure order. Finally, our reading of the orders of August 26, 1988, and September 23, 1988, indicates that they are not overly broad. We therefore AFFIRM the district court.