(September 12, 2002)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD PURLEY, Respondent. NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, Nonparty Appellant. [747 NYS2d 10]

In September 1999, defendant pleaded guilty to two counts of attempted criminal sale of a controlled substance in the third degree (Penal Law §§ 110.00, 220.39 [1]) and, pursuant to his plea agreement, defendant was to be sentenced, as a second felony offender, to two concurrent terms of incarceration of 3 to 6 years. In February 2000, defendant informed the court through counsel that he had been suffering from Acquired Im- mune Deficiency Syndrome (AIDS) for several years and that his doctor had advised him that a prison sentence of 3 to 6 years could cause his death. The court postponed sentencing and ordered a hearing on the issue of whether defendant's incarceration would likely cause his death. That hearing was held on June 29, and July 14, 2000.

Defendant, at the conclusion of the hearing, moved to modify his sentence agreement, and in a lengthy written decision, dated September 28, 2000, the court denied the application. The court held, inter alia, that: "While the standard of medical

care within DOCS facilities once lagged far behind national standards, it can no longer be said that a New York State prison sentence is tantamount to a sentence of death for a person with AIDS * * * In fact, DOCS now employs state-of-the-art standards in meeting the needs of HIV-positive prisoners, employing the most recently available medications, including all of the ART [antiretroviral] medications now being taken by the defendant * * * this is not the 'rare case' with 'exceptional circumstances' which would warrant the vacating of defendant's prison sentence."

After soliciting input from, and conducting a hearing with, among others, the People, defendant, DOCS, the New York City Department of Health and the New York City Health and Hospitals Corporation, the court issued a supplemental order which provided, inter alia:

"that upon his entry into the DOCS system, defendant shall be assigned to a level one facility [where a doctor and nurse are on call 24 hours], and shall remain there unless and until a DOCS physician, in consultation with an HIV infectious disease specialist, determines that his condition does not require such level of care;

"—that while incarcerated in any DOCS facility, defendant shall be lodged at a facility with an HIV clinic on site and at which he will be assigned a single primary care physician. That physician shall be responsible for overseeing defendant's condition, coordinating and monitoring the provision of services to him, assessing his medical needs and shall have access to an HIV specialist with whom to consult whenever the physician determines it to be medically necessary;

"—that DOCS shall inform this court of defendant's location within the state prison system upon his entry therein. Additionally, DOCS is directed to advise the court of every transfer of defendant to various facilities within the state prison system, and of the category of medical care available at that facility and the name and telephone number of defendant's primary care physician * * * Upon the completion of defendant's reception processing within DOCS and transfer to a general confinement facility, the office of the DOCS General Counsel will provide the court with a report on defendant's health status and the care and medical treatment provided to defendant, and will continually update such reports * * *

"—that prior to changing defendant's ART regimen, DOCS must furnish defendant with adequate information regarding the proposed modification of his medical regimen and the reasons therefor, and must afford defendant an opportunity to consult, at his own expense, with [his personal doctor]."

DOCS appeals and we reverse.

Initially, we note that the authority for a direct appeal of this order is not set forth in article 450 of the Criminal Procedure Law. The supplemental order, however, is civil, rather than criminal, in nature as it in no way affects the criminal proceeding or judgment itself and is entirely collateral to and discrete from the criminal proceeding (*Matter of Director of Assigned Counsel Plan of City of N.Y. [Bodek]*, 87 NY2d 191, 196 [Bellacosa, J., concurring], citing *Matter of Hynes v Karassik*, 47 NY2d 659, 661 n 1). Since the order was an exercise of the court's civil jurisdiction (CPL 10.10 [7]), and since DOCS is an aggrieved party (CPLR 5511), it may appeal from this order, which "affects a substantial right" (CPLR 5701 [a] [2] [v]).

The supplemental order is also appealable because DOCS, as a nonparty, would otherwise be precluded from vindicating its position before an appellate body (*People v Marin*, 86 AD2d 40, 42-43, *affd* 65 NY2d 741).

With regard to the supplemental order's directives, upon the imposition of sentence, the courts are required to commit defendants to the custody of DOCS (Penal Law § 70.20 [1]), and thereafter prison services, including health care, are the responsibility of DOCS (*see* 9 NYCRR 7600.1 *et seq.*). It is also the responsibility of DOCS to choose into which correctional facility an inmate will be placed, or to provide for the transfer of an inmate from one facility to another (Correction Law §§ 23, 71), and Correction Law § 71 (6) addresses the situation where a court oversteps its jurisdictional boundaries and orders commitment to a specified institution by providing: "A commitment to a specified institution in the department, rather than to the custody of the department, which is valid in all other respects shall not be void for such reason but shall be deemed a commitment to the custody of the department and the person so committed shall be conveyed to the proper institution as prescribed by this section." (*See also People v Sass*, 182 AD2d 861, *lv denied* 80 NY2d 837 [the court's comments as to where defendant should or should not be placed following his commitment must be viewed as mere recommendations which do not affect DOCS authority].)

Indeed, the court itself acknowledged that the specific conditions set forth in its order "may very well be redundant to policies and procedures that DOCS would undertake without any prompting from me," and went on to praise DOCS AIDS-related services as "state of the art" and observe that "DOCS has received national recognition for its leadership in the treatment of AIDS, and has implemented a comprehensive range of policies and procedures" for its treatment.

To the extent that defendant maintains that the vacatur of the supplemental order will result in a successful CPL article 440 motion, we find such a result unlikely in that it would require a ruling that the judgment of conviction "was obtained in violation of a right of the defendant under the constitution of this state or of the United States" (CPL 440.10 [1] [h]). Here, the IAS court was mindful of the government's constitutional obligation to provide adequate care to those whom it incarcerates (*see Estelle v Gamble*, 429 US 97), and nonetheless declined to modify defendant's sentences.

Finally, in addition to our finding that the motion court's decision to micromanage the terms of defendant's incarceration, and concomitant health care, was improper, we also note that the Legislature has provided a mechanism for the release, on medical parole, of terminally ill inmates, which is commonly referred to as the Compassionate Release Program (*see* Executive Law § 259-r). Concur—Williams, P.J., Nardelli, Saxe, Rosenberger and Marlow, JJ.