FILED
United States Court of Appeals
Tenth Circuit

December 2, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MACKENZIE GLADE HUNTER,

Defendant - Appellee.

-------------------------------------

SUE ANTROBUS; KEN ANTROBUS,

Movants - Appellants.

No. 08-4010

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D. Ct. No. 2:07-CR-00307-DAK-1)**

Paul G. Cassell, University of Utah College of Law, Salt Lake City, Utah (Brigida Benitez and P. Davis Oliver, Wilmer Cutler Pickering Hale & Dorr, LLP, Washington, DC; Gregory C. Skordas and Rebecca C. Hyde, Skordas, Caston & Hyde, LLC, Salt Lake City, Utah, with him on the briefs), appearing for Appellants.

Michael A. Rotker, Assistant United States Attorney, United States Department of Justice, Washington, DC (Brett L. Tolman, United States Attorney, Salt Lake City, Utah and Diana Hagen, Assistant United States Attorney, Office of the United States Attorney for the District of Utah, Salt Lake City, Utah, with him on the brief), appearing for Appellee United States of America.

Scott Keith Wilson, Assistant Federal Defender (Steven B. Killpack, Utah Federal

Defender, and Parker Douglas, Assistant Federal Defender, Office of the Federal Public Defender for the District of Utah, Salt Lake City, Utah, with him on the brief), appearing for Appellee Mackenzie Glade Hunter.

Before **TACHA** and **HARTZ**, Circuit Judges, and **DeGIUSTI**,[*] District Judge.

**TACHA**, Circuit Judge.

The Appellants are the parents of Vanessa Quinn, who was shot and killed by Sulejman Talovic in Salt Lake City on February 12, 2007. Mr. Talovic purchased the gun that killed Ms. Quinn from Mackenzie Glade Hunter, who pleaded guilty to unlawfully transferring a firearm to a juvenile and being a drug user in possession of a firearm. In the district court the Appellants, Ken and Sue Antrobus, moved for Ms. Quinn to be declared a victim of Mr. Hunter's crime of selling the gun. That designation would have given the Antrobuses certain enumerated rights under the Crime Victims' Rights Act of 2004 ("CVRA"), *see* 18 U.S.C. § 3771, including the right to be heard at Mr. Hunter's sentencing hearing and the right to restitution. 18 U.S.C. § 3771(a)(4), (a)(6). The district court denied the motion, concluding that Ms. Quinn was not a victim of Mr. Hunter's crime as that term is defined in the CVRA. The Antrobuses petitioned this court for a writ of mandamus, as set forth under the CVRA, to contest the

---

[*]Honorable Timothy D. DeGiusti, District Judge for the Western District of Oklahoma, sitting by designation.

district court's order.  *See* 18 U.S.C. § 3771(d)(3).  We denied the writ.  *In re Antrobus*, 519 F.3d 1123, 1126 (10th Cir. 2008).

After the district court sentenced Mr. Hunter to fifteen months' imprisonment, the Antrobuses filed a timely notice of appeal from his judgment of conviction and sentence.  We hold that individuals claiming to be victims under the CVRA may not appeal from the alleged denial of their rights under that statute except through a petition for a writ of mandamus as set forth by 18 U.S.C. § 3771(d)(3).  Therefore, we DISMISS this appeal.

## I.  BACKGROUND

Sometime during the summer of 2006, Mr. Hunter sold a handgun to Mr. Talovic, who at the time was seventeen years old.  On February 12, 2007, Mr. Talovic entered the Trolley Square Shopping Center in downtown Salt Lake City, armed with the handgun from Mr. Hunter, a shotgun, and ammunition for both.  Firing the weapons, he killed one person outside the mall and four more inside the mall.  Ms. Quinn, who had been shot twice with the handgun, was one of these victims.  Four other people were seriously wounded.  Mr. Talovic's rampage ended when an off-duty police officer shot and killed him.

On May 16, 2007, a federal grand jury indicted Mr. Hunter on two felony counts: being a drug user in possession of a firearm, *see* 18 U.S.C. § 922(g)(3), and unlawfully transferring a firearm to a juvenile when knowing or having reason to know that the juvenile intended to use the firearm in committing a

crime. *See* 18 U.S.C. § 922(x)(1); *id.* § 924(a)(6)(B)(ii). Pursuant to a plea agreement, Mr. Hunter pleaded guilty to the first count and to a new information that charged him with unlawfully transferring a firearm to a juvenile (without any allegation about knowledge), a misdemeanor. *See* 18 U.S.C. § 922(x)(1); *id.* § 924(a)(6)(B)(i). The government agreed to drop the second count, to recommend that Mr. Hunter receive full credit for acceptance of responsibility, and to recommend that Mr. Hunter be sentenced at the low end of the range set forth by the United States Sentencing Guidelines. The district court accepted the agreement in November 2007 and set sentencing for January 14.

On December 13, the Antrobuses moved under the CVRA for Ms. Quinn to be recognized as a victim of Mr. Hunter's unlawful transfer of a firearm. As the guardians of their deceased daughter, they sought, *inter alia*, the right to make a victim-impact statement and the right to restitution.[1] *See* 18 U.S.C. § 3771(a), (d)(3). Under the CVRA, a "crime victim" is one who is "directly and proximately harmed as a result of the commission of a Federal offense." *Id.* § 3771(e).

The district court concluded that Ms. Quinn was not a victim of Mr. Hunter's criminal gun sale and therefore denied the Antrobuses' motion. The district court reasoned that the unlawful sale was not the proximate cause of Ms.

---

[1] The CVRA permits the legal guardians of a deceased crime victim to assume the victim's rights. *See* 18 U.S.C. § 3771(e).

Quinn's death because it was not foreseeable that Mr. Talovic would use the gun in that manner. The court also noted the approximately eight month gap between the gun sale and Mr. Talovic's shooting spree.

The Antrobuses then applied for a writ of mandamus under the CVRA, *see* 18 U.S.C. § 3771(d)(3), asking this court to declare their daughter a victim of Mr. Hunter's unlawful gun sale. *In re Antrobus*, 519 F.3d 1123, 1123 (10th Cir. 2008). Applying the mandamus standard of review, this court stated the Antrobuses' right to the writ was not "clear and indisputable." *Id.* at 1126. Therefore, we denied the writ. *Id.*

On January 14, 2007, the district court sentenced Mr. Hunter to fifteen months in prison and dismissed Count 2 of the indictment, pursuant to the plea agreement. Neither the government nor Mr. Hunter appealed. The Antrobuses, however, filed a timely notice of appeal. Their brief states that they are appealing "from the conviction and judgment entered by the [d]istrict [c]ourt . . . sentencing Mackenzie Glade Hunter to 15 months in prison, as well as the district court's denial of their motion to recognize Vanessa Quinn as a 'victim' under the Crime Victims' Right[s] Act." The government, supported by Mr. Hunter, moved to dismiss the appeal because the Antrobuses were not parties to the underlying criminal proceeding and therefore had no right to appeal from it. In the alternative, the government urges us to affirm the district court's order. For the reasons explained below, we dismiss.

## II. DISCUSSION

A crime victim does not have an express right under the CVRA to appeal the defendant's conviction and sentence based on alleged violations of the statute. Rather, the CVRA provides that if the district court denies a crime victim his rights, the victim may immediately petition the court of appeals for a writ of mandamus. 18 U.S.C. § 3771(d)(3). The court of appeals must grant or deny the writ within seventy-two hours. *Id.* The government, however, may assert the victim's rights in any appeal of the defendant's conviction or sentence. *See id.* § 3771(d)(4) ("In any appeal in a criminal case, the Government may assert as error the district court's denial of any crime victim's right in the proceeding to which the appeal applies."); *see also In re Antrobus*, 519 F.3d at 1129 ("While the CVRA provides individuals seeking review of a district court's 'victim status' decision with mandamus review, it simultaneously affords the government with the ability to obtain ordinary appellate review of the same decision.").

That the CVRA does not provide for victim appeals is consistent with the well-established precept that "only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988). *See also United States v. Wade*, 992 F. Supp. 6, 10 (D.D.C. 1997) ("It is a general rule that non-parties . . . may not appeal a criminal sentence awarded another."). According to the government, this is not simply a prudential consideration that delimits the rights of litigants; rather, it is a

jurisdictional bar that "inheres" in 28 U.S.C. § 1291. Thus, the government argues that we do not have jurisdiction under § 1291 and must dismiss the Antrobuses' appeal on that basis.

The government's jurisdictional argument misses the mark. Section 1291 limits our appellate jurisdiction to "all final decisions of the district courts." It constrains what may be appealed, not who may bring such appeals. *See Bode v. Clark Equip. Co.*, 807 F.2d 879, 880–81 (10th Cir. 1986) ("That appellant is a nonparty does not affect our consideration whether the . . . order is appealable [as a final judgment]. Whether a nonparty may appeal, either from an interlocutory order or from a final judgment, is a separate question."). We therefore disagree with the government's position that we lack jurisdiction under § 1291 to consider this appeal.

The Antrobuses' central argument misses the mark for a similar reason. The format of their argument for a right to appeal traces our decision in *United States v. Hahn*. 359 F.3d 1315 (10th Cir. 2004) (en banc). In *Hahn*, we held that a defendant who waived his rights under a specific sentencing statute had not waived his general right of appeal under § 1291. *Id.* at 1321. We stated that a specific statute does not repeal a more general statute "absent a clearly expressed congressional intention." *Id.* (quoting *Branch v. Smith*, 538 U.S. 254, 273 (2003)).

The Antrobuses argue that we have jurisdiction to hear their appeal under

28 U.S.C. § 1291, and they rely on *Hahn* in asserting that the CVRA's mandamus provision does not repeal the jurisdictional grant of § 1291. That argument fails, however, because it is based on the premise that non-party appellate rights are founded in § 1291. Actually, the issues of jurisdiction under § 1291 and non-party appellate rights are distinct. Moreover, one can distinguish *Hahn* by merely reading the first word of the opinion: "Defendant-Appellant . . . ." *Id.* at 1317. Because the defendant in *Hahn* was the appellant, that case does not address the appellate rights of non-parties.

Our inquiry turns, then, to the issue of whether non-parties such as the Antrobuses have the right to appeal following a criminal sentence. The Antrobuses have cited several cases in which courts have heard non-party appeals. We find these cases distinguishable. More important, we are aware of no precedent for allowing a non-party appeal that would reopen a criminal case following sentencing.

In *Devlin v. Scardelletti*, 536 U.S. 1 (2002), the Supreme Court allowed an unnamed class member to appeal from a class action settlement. 536 U.S. at 8–9. The Court noted a case in which a non-party was allowed to appeal a contempt order, "given the binding nature of that adjudication upon the interested party." *Id.* at 8 (citing *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988)). This court has characterized *Devlin* as a "narrow exception" to the rule that non-parties cannot appeal a judgment. *S. Utah*

*Wilderness Alliance v. Kempthorne*, 525 F.3d 966, 968 (10th Cir. 2008).

*Devlin*, like many of the cases that the Antrobuses cite, is a civil case. On the issue of non-party appeals, there is an important distinction between civil and criminal cases. Civil cases often implicate the pecuniary rights of non-parties, such as the unnamed class member in *Devlin*. For instance, this court has allowed the children of a decedent to appeal from a wrongful death judgment obtained by the decedent's widow. *Plain v. Murphy Family Farms*, 296 F.3d 975, 980 (10th Cir. 2002).

Criminal trials, on the other hand, place an individual citizen against the United States government. While non-parties may have an interest in aspects of the case, they do not have a tangible interest in the outcome. This distinction is evidenced by our procedural rules. The Federal Rules of Civil Procedure allow non-parties to intervene to assert their rights. *See* Fed. R. Civ. P. 24. The Federal Rules of Criminal Procedure contain no comparable provision. This distinction recognizes that non-parties often have a unique interest in civil cases. *See, e.g.*, *Kempthorne*, 525 F.3d at 968 (noting that the children in *Plain* had a "unique interest . . . in the apportionment of damages which conflicted with their stepmother's" interest.). Because non-parties do not have a comparable unique interest in the outcome of criminal trials, we do not consider *Devlin* or *Plain*

persuasive in this case.[2]

A series of restitution cases, however, stands for the proposition that non-parties have no right to post-judgment appeals in criminal cases. In *United States v. Kelley*, 997 F.2d 806 (10th Cir. 1993), the appellant claimed a right to restitution under the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, but we followed the Eleventh and Second Circuits in holding that Congress neither explicitly nor implicitly provided in the VWPA a private right of action for victims. *Kelley*, 997 F.2d at 807–08; *see also United States v. Johnson*, 983 F.2d 216 (11th Cir. 1993); *United States v. Grundhoeffer*, 916 F.2d 788 (2d Cir. 1990). We concluded that this precluded victims from appealing restitution orders. *Kelley*, 997 F.2d at 807–08. Similarly, the Eighth Circuit has denied victims the right to appeal from a criminal sentence and assert a right to restitution under the Mandatory Victims Rights Act ("MVRA"). *See United States v. United Sec. Sav. Bank*, 394 F.3d 564, 567 (8th Cir. 2004).

While the restitution issue is not perfectly analogous, those cases offer a significant parallel to the Antrobuses' case. First, restitution is one form of relief

---

[2]A New York case has also recognized this distinction between civil and criminal cases. *See People v. Purley,* 747 N.Y.S.2d 10 (N.Y. App. Div. 2002). The *Purley* defendant had AIDS, and the trial court issued a supplemental order mandating certain conditions for his incarceration. *Id.* at 11. The Appellate Division allowed the Department of Correction Services to appeal, but in authorizing that non-party appeal the court noted that the case was "civil, rather than criminal, in nature as it in no way affects the criminal proceeding or judgment itself and is entirely collateral to and discrete from the criminal proceeding." *Id.* at 12.

that the Antrobuses could seek if Ms. Quinn were granted victim status, just as the non-party appellants sought under the VWPA and the MVRA. *See* 18 U.S.C. § 3771(a)(6). Second, in each restitution case, a non-party tried to assert a right on appeal following a criminal prosecution. And in each instance, even though the non-party appellant had a pecuniary interest at stake, the court of appeals determined that the party could not bring a direct appeal.

There are, however, instances in which courts have allowed non-party appeals in criminal cases. The Antrobuses rely most heavily on our decision in *Anthony v. United States*, 667 F.2d 870 (10th Cir. 1981), the Fourth Circuit's decision in *Doe v. United States*, 666 F.2d 43 (4th Cir. 1981), and a variety of appeals involving the press.

In *Anthony*, the defendant was convicted of unlawfully wiretapping the telephone of Dr. Vernon Sisney. *Anthony*, 667 F.2d at 872. The defendant moved for a new trial based on newly discovered evidence—specifically, tapes that were the product of the defendant's wiretap on Dr. Sisney's phone. *Id.* Over Dr. Sisney's objection and motion to suppress, the district court ordered the discovery of the tapes. *Id.* at 873. Dr. Sisney appealed. Without specifically addressing the issue of non-party appeals, we concluded that Dr. Sisney had an explicit statutory right under 18 U.S.C. § 2518(10)(a)[3] to object to the discovery and to

---

[3] 18 U.S.C. § 2518(a) provides:

(continued...)

-11-

move to suppress the evidence. *Id.* at 877. We then held that the non-final

discovery order fell within the collateral-order exception to the final-judgment

rule. *Id.* at 878.

In *Doe*, the defendant was charged with rape. *Doe*, 666 F.2d at 45. In a

pre-trial motion, he sought to introduce evidence of the sexual history of the

victim, who was the government's central witness. *Id.* The district court granted

the motion, and the victim appealed. *Id.* The Fourth Circuit looked to Federal

Rule of Evidence 412, which governs the admissibility of rape victims' sexual

behavior. *Id.* at 46. Although that Rule does not refer to victims' appellate

rights, the court held that an appellate remedy is implicit as a necessary corollary

of the Rule's purpose in protecting victims. *Id.* Similar to this court in *Anthony*,

---

[3](...continued)
Any aggrieved person in any trial, hearing, or proceeding in or before
any court, department, officer, agency, regulatory body, or other
authority of the United States, a State, or a political subdivision
thereof, may move to suppress the contents of any wire or oral
communication intercepted pursuant to this chapter, or evidence
derived therefrom, on the grounds that—

> (i) the communication was unlawfully intercepted;

> (ii) the order of authorization or approval under which it
> was intercepted is insufficient on its face; or

> (iii) the interception was not made in conformity with
> the order of authorization or approval.

An "aggrieved person" is defined in 18 U.S.C. § 2510(11) as "a person who
was a party to any intercepted wire, oral, or electronic communication or a person
against whom the interception was directed."

the Fourth Circuit exercised jurisdiction over the interlocutory appeal on the basis of the order's practical finality. *Id.*

The Antrobuses also cite cases in which news organizations have appealed rulings denying them access to criminal trials. *See In re Subpoena to Testify Before Grand Jury Directed to Custodian of Records*, 864 F.2d 1559, 1561 (11th Cir. 1999) (allowing news organizations to appeal an order prohibiting counsel and parties from disclosing information about grand jury proceedings); *United States v. Antar*, 38 F.3d 1348, 1355–56 (3d Cir. 1994) (allowing news organizations to appeal a judge's order sealing voir dire transcripts); *United States v. Chagra*, 701 F.2d 354, 360 (5th Cir. 1983) (allowing news organizations to appeal an order closing a trial).

There is a common thread in those criminal cases in which courts have permitted non-party appeals: the appeals all related to specific trial issues and did not disturb a final judgment. In fact, other than *Antar*, which simply unsealed voir dire transcripts, all of the cited appeals were interlocutory.[4] For instance, the

---

[4]In addition to the cases already mentioned, the Antrobuses cite a Fifth Circuit case, *United States v. Briggs*, 514 F.2d 794 (5th Cir. 1975). The appellants were named in the case as unindicted co-conspirators. *Id.* at 797. Prior to trial, the appellants filed in district court, asking that their names be expunged from the indictment. *Id.* When the district court denied their motion, they appealed. *Id.* The Fifth Circuit did not consider the issue of a non-party appeal, instead addressing the issues of justiciability, standing, and mootness. *Id.* Regardless, *Briggs* is another example of a case in which the non-party appeal occurred before final judgment and had no bearing on the underlying trial of the defendants.

-13-

*Anthony* court assessed a discovery order. *Anthony*, 667 U.S. at 877. The *Doe* court assessed the admissibility of evidence at trial. *Doe*, 666 F.2d at 45. The media cases dealt with access during trials. *See Chagra*, 701 F.2d at 360; *In re Subpoena*, 864 F.2d at 1561.

This distinction is significant. Unlike those cases, a successful appeal by the Antrobuses would produce the extraordinary result of reopening Mr. Hunter's sentence. Before sentencing, the Antrobuses sought to exercise their purported rights under the CVRA on the basis that their daughter was a victim of Mr. Hunter's unlawful sale of the firearm. The district court denied their request, and the Antrobuses properly pursued a writ of mandamus to challenge the district court's interlocutory order. They were denied relief, and Mr. Hunter was sentenced. If we were now to deem Ms. Quinn a victim under the CVRA, the Antrobuses would gain several rights, including the right to restitution and to speak at Mr. Hunter's sentencing hearing. 18 U.S.C. § 3771(a)(4), (6). The right to speak at sentencing could only be vindicated by reopening the sentencing proceeding. To our knowledge, there is no precedent—nor any compelling justification—for allowing a non-party, post-judgment appeal that would reopen a defendant's sentence and affect the defendant's rights. Indeed, the restitution cases cited above counsel against such a practice.

Several provisions of the CVRA further support our conclusion. The CVRA explicitly provides for a single avenue through which individuals may seek

-14-

appellate review of the district court's application of the statute: mandamus. *See* 18 U.S.C. § 3771(d)(3). Given that the CVRA contains this express remedy, we are reluctant to read additional remedies—including the right to a direct appeal— into it.[5] *See Hartman v. Kickapoo Tribe Gaming Comm'n*, 319 F.3d 1230, 1232–33 (10th Cir. 2003) ("'[W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies.'") (quoting *Nat'l R.R. Passenger Corp. v. Nat'l Assoc. of R.R. Passengers*, 414 U.S. 453, 458 (1974)).

Moreover, the CVRA provides that "[i]n any appeal in a criminal case, *the Government* may assert as error the district court's denial of any crime victim's right in the proceeding to which the appeal applies." 18 U.S.C. § 3771(d)(4) (emphasis added). If Congress contemplated that "victims" could take a direct appeal, then surely that provision would read that either the victims or the

---

[5]The Second and Ninth Circuits have implied that they would agree with our conclusion, that mandamus is the only method by which a crime victim may appeal the denial of relief under the CVRA. In applying a traditional abuse-of-discretion review to the district court's decision—as opposed to the heightened level of review typically employed in mandamus actions—both circuits appeared to indicate that appellate rights are limited to mandamus actions under § 3771(d)(3). *See Kenna v. U.S. Dist. Court*, 435 F.3d 1011, 1017 (9th Cir. 2006); *In re Huff Asset Mgmt. Co., LLC*, 409 F.3d 555, 562–63 (2d Cir. 2005). To hold otherwise would effectively grant victims two opportunities to appeal, both of which would be subject to identical appellate standards of review—a clearly inefficient and illogical scheme.

This court did reject application of abuse-of-discretion review to CVRA mandamus petitions, *see In re Antrobus*, 519 F.3d at 1125, but that decision in no way turned on the future availability of victim appeals. Instead, this court focused its holding on the plain meaning of the term "mandamus." *Id.*

-15-

government could assert victims' rights on appeal. Instead, the provision allowing "the Government" to assert victims' rights indicates that Congress did not expect victims to assert their own rights through post-judgment appeals.

Another CVRA section lays out the conditions under which a plea or sentence may be re-opened. *Id.* § 3771(d)(5). One of the conditions is that the victim must have petitioned the court of appeals for a writ of mandamus.[6] *Id.* § 3771(d)(5)(B). That provision makes no mention of a direct appeal. *See id.* Had Congress intended to allow for direct appeals, then any section allowing for a sentence to be reopened following a mandamus action surely would have allowed for the same remedy after a direct appeal.

Finally, § 3771(d)(6) states that "[n]othing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction." *Id.* This provision evinces the impropriety of re-opening sentences—especially those resulting from plea agreements—once purported victims have asserted their rights in the district court and to the court of appeals in a mandamus petition.[7] Mr. Hunter's fifteen-month sentence, pursuant

---

[6]The provision does not state whether the application for a writ has to be successful, but it is clear that only a successful petition could reopen a plea or sentence. It would make no sense to assume that a mere petition for a writ of mandamus—no matter how meritorious—would trigger a right for the petitioner to reopen a sentence.

[7]The provision in Section 3771(d)(5) allowing for the re-opening of sentences or pleas after a mandamus action clearly contemplates a situation in

(continued...)

-16-

to a plea bargain, represents a compromise between Mr. Hunter and the government. At its discretion, the government reduced the charges against Mr. Hunter in exchange for his guilty plea.

If individuals were allowed to re-open criminal sentences after all issues have been resolved—including any mandamus petitions by victims—then the government's prosecutorial discretion would be limited. A successful appeal by the Antrobuses would require a new sentencing hearing that could lead to a new sentence. *See id.* § 3771(a)(4). The government determined what it believed to be the proper sentence for Mr. Hunter, and Section 3771(d)(6) shows that Congress did not intend to allow non-party appeals that could disturb that judgment.

In sum, neither our case law nor the CVRA provide for non-parties like the Antrobuses to bring a post-judgment direct appeal in a criminal case. We therefore dismiss this appeal.

### III. PENDING MOTIONS

In addition to the Antrobuses' appeal, we also must address two pending motions. The Antrobuses have filed a motion to remand the case for rehearing based on "newly discovered evidence," and the government has filed a motion to

---

[7](...continued)
which the victim did not get a ruling on the petition before a plea or sentencing. In this case, the Antrobuses filed their mandamus petition, this court denied it, and then the district judge sentenced Mr. Hunter.

lodge two documents under seal with the clerk of this court.

We decline to reach the merits of the Antrobuses' motion because at this stage a motion for a rehearing should be filed in the district court. The Antrobuses cite Fifth Circuit authority for the proposition that such a motion may be filed in the Court of Appeals. *See United States v. Fuentes-Lozano*, 580 F.2d 724, 725–26 (5th Cir. 1978). That case held the Court of Appeals could remand a case to the district court based on newly discovered evidence while an appeal was pending. *Id.* That determination was necessary because Rule 33 of the Federal Rules of Criminal Procedure does not allow the district court to grant a motion for a new trial while an appeal is pending. *Id.* at 725. This court has granted a similar motion to remand for a new trial; but again, the motion was granted while an appeal was pending. *United States v. Siviglia*, 686 F.2d 832, 834 (10th Cir. 1981). Because we are now dismissing the Antrobuses' appeal, they can—and should—file their motion for a new hearing in light of newly discovered evidence in the district court.[8]

We grant the government's motion to lodge two non-record documents under seal with the clerk of the court. The documents are an ATF report and a

---

[8]At the time of the motion, it was proper for the Antrobuses to file a remand motion with the Court of Appeals. Rule 33(b)(1) of the Federal Rules of Criminal Procedure states that during a pending appeal, a district court "may not grant a motion for a new trial until the appellate court remands the case." But now that the appeal is no longer pending, the district court is free to grant the relief the Antrobuses seek, and therefore the district court is the proper venue for the motion for a new hearing.

grand jury transcript.  The Antrobuses have not opposed the portion of the motion seeking to lodge the documents with the clerk, nor have they opposed sealing the grand jury transcripts.  They do oppose keeping the ATF report under seal.  The district court and this court have already held that the CVRA does not provide "victims" with a right of access to the government's files.  *See In re Antrobus*, No. 08-4013, at 6 (10th Cir. Feb. 1, 2008) (order denying Antrobuses' petition for writ of mandamus).  We therefore grant the motion to lodge the documents under seal.

## IV.  CONCLUSION

We hold that individuals claiming to be victims under the CVRA may not appeal from the alleged denial of their rights under that statute except through a petition for a writ of mandamus as set forth by 18 U.S.C. § 3771(d)(3).  We therefore DISMISS the Antrobuses' appeal.  We also conclude that their motion for a new hearing in light of newly discovered evidence should, if at all, be filed in the district court, and therefore we DISMISS their motion to remand.  Finally, we GRANT the government's motion to lodge an ATF report and grand jury transcripts under seal with the clerk of the court.