NOT DESIGNATED FOR PUBLICATION

No. 114,823

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GABRIEL GANT, *et al.*,
*Appellees*,

v.

JUSTIN BIRK, *et al.*,
*Defendants*.
(KEVIN MCMASTER),
*Appellant.*

MEMORANDUM OPINION

Appeal from Coffey District Court; ERIC W. GODDERZ, judge. Opinion filed July 28, 2017. Affirmed in part, reversed in part, and remanded with directions.

*Kevin M. McMaster*, of McMaster & McMaster LLC, of Wichita, appellant pro se.

*Vanessa H. Gross*, *Jonathan P. Kieffer*, and *Adam S. Davis,* of Wagstaff & Cartmell LLP, of Kansas City, Missouri, for appellees.

Before BUSER, P.J., PIERRON and STANDRIDGE, JJ.

*Per Curiam*:  Justin Birk and Kathryn Gant were involved in a car accident, resulting in Kathryn's death. Plaintiff Gabriel Gant, Kathryn's husband, individually and as heir and administrator of her estate, filed suit against defendants Justin Birk, Edward Birk, Laura Birk, and B&B Cooperative Ventures, LLC, d/b/a Birk Oil Company. Kevin McMaster represented defendants during most of the case. Over the course of discovery, the district court sanctioned McMaster twice for failing to comply with court orders. McMaster later withdrew as counsel. He eventually filed a motion to intervene in order

1

to appeal the sanctions. The district court denied his motion to intervene. McMaster appeals, arguing his motion to intervene was not untimely because the sanctions were not appealable until final judgment and the district court abused its discretion when it imposed monetary sanctions on him for failing to comply with discovery orders.

At approximately 7:50 a.m. on June 10, 2011, Kathryn was traveling eastbound on K-58 on her way to work. Justin was traveling westbound on K-58 in a 2007 Cadillac Escalade. According to police reports, Justin crossed the center line in a no-passing zone and struck Kathryn's vehicle head-on. Kathryn suffered severe injuries and died at the scene.

On April 26, 2013, plaintiffs filed a petition for damages as a result of Kathryn's death. The claims included wrongful death, survival, negligent entrustment, and alter ego. Plaintiffs alleged Edward, Linda, and Birk Oil owned the 2007 Cadillac Escalade Justin had been driving, and they allowed him to drive it despite Justin's long history of traffic violations and related offenses. Plaintiffs also claimed that Birk Oil could be held responsible for the actions of Edward and Linda because their affairs were so intermingled. In the petition, plaintiffs noted that the Secretary of State for Kansas listed Birk Oil's status as "forfeited" for failure to file an annual report, but alleged the company continued to do business in the manner for which it was incorporated.

Plaintiffs later filed an amended petition on September 3, 2014, to more accurately state the name of Birk Oil as B&B Cooperative Ventures, d/b/a Birk Oil Company based on information that came to light during discovery. Also added was a claim for respondeat superior.

On May 3, 2013, in response to the original petition, Kevin McMaster, the attorney for defendants, filed a number of motions. He filed a motion to strike on behalf

2

of defendants claiming plaintiffs' petition violated K.S.A. 60-212, 60-211 and 60-208. He filed a motion to dismiss on behalf of Edward and Linda Birk and a motion to dismiss on behalf of Birk Oil. In the motion to dismiss for Birk Oil, McMaster did not allege that Birk Oil should not have been named as a party because it was a defunct entity. He also filed objections to discovery on behalf of defendants on May 13, 2013.

*October 7, 2013, Hearing*

At a hearing on October 7, 2013, the district court addressed defendants' motions to strike and motions to dismiss. The court denied the motion to strike and the motion to dismiss filed by Edward and Linda. As for Birk Oil's motion to dismiss, the court noted there was some question as to the connection between Birk Oil and the accident. Plaintiffs' counsel argued discovery regarding the Escalade involved in the accident, Justin's employment records, and any liability insurance was necessary in order to demonstrate that Birk Oil should be a party in the lawsuit. McMaster argued that discovery regarding issues other than Justin's employment was irrelevant.

The district court ultimately decided to hold the motion to dismiss Birk Oil in abeyance until further discovery was completed. The court found that discovery regarding Birk Oil's connection to the Escalade, including who paid for the vehicle, who maintained it, who paid for the fuel, and whether Birk Oil included it as a tax exemption, would be proper and discoverable. The court also held that Justin's employment records would be discoverable. The court added, "I think Mr. McMaster has already heard that I told you it would be proper discovery, so I wouldn't expect any objections to those questions." Finally, the court held that any insurance policies that might potentially cover any of plaintiffs' claims were also discoverable.

Plaintiffs drafted a journal entry for the October 7, 2013, hearing and submitted it for court approval. McMaster filed an objection to the proposed journal entry, arguing

3

that the hearing was merely a discussion, counsel had not presented any arguments or motion at the hearing, and the court had not made any rulings. The district court adopted plaintiffs' proposed journal entry over McMaster's objection.

In the journal entry, the district court denied all of defendants' motions except Birk Oil's motion to dismiss. The court stated it would hold that motion in abeyance until the parties completed certain discovery. Such discovery would include:

> "i. Discovery regarding the Cadillac Escalade involved in this accident: Such discovery may include: whether Birk Oil Company had any ownership interest in the Escalade; whether Birk Oil Company made any payment(s) toward the purchase of the Escalade; where funds came from for the purchase of the Escalade; whether Birk Oil Company made any payment(s) toward fuel, taxes, insurance, titling, licensing of or maintenance to the Escalade; whether the Escalade was an asset used by Birk Oil Company or was used for company business or purposes; whether employees of Birk Oil Company [were] allowed to drive the Escalade either for work or non-work purposes; whether the Escalade was treated on the books of Birk Oil Company as a company asset or was treated on tax documents as a company asset or otherwise was depreciated as a company asset; and other general questions about the use and operation of the Escalade.
> "ii. Discovery regarding other Birk Oil Company vehicles: The items identified in paragraph (4)(i), above, also are proper as to other vehicles that Birk Oil Company has owned and/or used and/or operated.
> "iii. Discovery regarding employment records: Employment records, time records, and similar records pertaining to Justin Birk.
> "iv. Discovery regarding insurance: Evidence of any insurance maintained by any and all of the defendants including but not limited to any insurance issued to Birk Oil Company that extends any form of liability coverage to the defendants and/or any employees of Birk Oil Company."

The court also stated, "It is understood that any such information is relevant and is expected to be within the knowledge and possession of [Defendants], and therefore the Court does not expect to receive objections to the same."

In November and December 2014, defendants provided their answers and objections to plaintiffs' interrogatories and requests for production. Plaintiffs had requested identifying information for any insurance policy which might indemnify defendants. Defendants provided information regarding a Progressive Northwestern Insurance Company (Progressive) auto insurance policy. McMaster objected to providing any other information, arguing K.S.A. 60-226(b)(3) limited that which was discoverable regarding insurance.

Plaintiffs had also requested all phone numbers of any and all cellphones in Justin's possession on the day of the accident, as well as the cell phone carrier and who paid the bill for those cellphones. Justin answered only that the carrier for his cellphone was US Cellular. He refused to provide the number because of "perceived spying."

Additionally, plaintiffs had requested that Justin list all vehicles owned by him between January 24, 2006, and the present, as well as financial information regarding the purchase of these vehicles. McMaster objected on the grounds that this information was irrelevant. Justin only listed five vehicles he owned at the time of the accident. Defendants also produced records demonstrating Edward and Linda owned the Escalade.

*January 23, 2014, Hearing*

On January 23, 2014, the district court held another hearing to address further issues with discovery. Plaintiffs pointed out that the journal entry for the October 7, 2013, hearing entitled Gant to evidence of any insurance issued to Birk Oil that would cover the other defendants or other Birk Oil employees, but defendants had only provided information regarding the Progressive insurance policy covering the Escalade. McMaster argued that defendants had already fully complied with the discovery request. He told the court, "I answered the question. They have all the insurance coverage

5

information that they need and is required by statute. . . . We're not out hiding insurance coverage from anybody, Judge. We answered the question. We answered it truthfully and we should just be able to move on." The court told McMaster, "[I]f Birk Oil company has an insurance policy, you're going to have to give it to the plaintiffs" because it may have covered Justin as an employee. The court later added, "Whatever Birk Oil has for insurance and whatever the Birks have on their homeowners policy, personal liability policies if they have any, they're going to have to give them up."

Next, the district court addressed an interrogatory requesting Justin list all vehicles he had leased or owned from January 24, 2006, up to the present. The court asked why plaintiffs were requesting information regarding vehicles from both before and after the accident. Plaintiffs' counsel explained the information could help to establish that Edward, Linda, and possibly Birk Oil had and continued to have a practice of giving Justin access to a number of different vehicles. McMaster argued the information was irrelevant, and plaintiffs were simply seeking information regarding assets. The judge held, "In regards to Justin and Justin alone I think that the interrogatory needs to be answered with the exception of the purchase price of the vehicle." The court later added that if Justin could not provide the necessary information regarding any vehicles he owned, Edward and Linda must provide the information if they had it.

The district court also addressed the issue of discovery regarding any cellphones Justin may have had on the day of the accident. At the hearing, McMaster argued any information beyond what Justin had already provided was not relevant, because Justin's time card alone would determine whether he was acting in the scope of his employment. The court disagreed:

"THE COURT: What if the cell phone establishes the fact that that's exactly what he was doing driving down the road is doing work for Birk Oil?

6

"MCMASTER: He's a laborer who punches a time clock. We produced the time card. He had not clocked in that morning.

"THE COURT: Okay, the fact he clocked in doesn't really, but what about if the phone calls shows that's what he was doing? . . .

"MCMASTER: Then it would be to mom, dad, and Justin's advantage, for him to take the position he was acting within the course and scope of his employment. And they've not taken that position because it's not true.

THE COURT: I understand that's what you're indicating, but I think that the plaintiff is entitled to look at those phone records and make sure that's in fact what the case is."

The judge later reiterated, "I think that interrogatory can be answered. It needs to be answered. I don't know that it's going to prove anything but it may."

As for any financial link between Birk Oil and Justin's vehicles, the court held:

"[I]f there's any information connecting Birk Oil to any of the vehicles that Justin had involvement with including this Escalade, you know, for instance if he used Birk Oil credit card to buy gas for his cars, well there's going to be a ledger somewhere about gas expense payments. . . . Or Birk Oil writes out a lump sum check to cover all of the taxes on all of the vehicles including Justin's, well they're going to have to give up the ledger."

*Supplemental Answers and Objections*

On January 29, 2014, McMaster served answers and objections to supplemental interrogatories that plaintiffs had served on Justin. In the supplemental interrogatories, plaintiffs again requested information regarding any insurance policies Birk Oil might have:

"8. Please state the names of any and all insurance and/or indemnifying companies with which Birk Oil company or anyone on its behalf has an agreement that may indemnify it, its owners, officers, and/or its employees, in whole or in part, against the payment of any judgment or settlement, including the carrier, the policy number, and the limits of applicable liability insurance. Please include any and all policies of vehicular insurance,

7

general liability insurance, homeowners insurance, business insurance, and umbrella insurance that may exist."

McMaster objected, arguing, "As stated on the record on October 7, 2013, plaintiffs were and have been provided information regarding the policy providing coverage for this accident and plaintiffs' claims. So this interrogatory is inappropriate."

Plaintiffs also requested information regarding any financial contributions Birk Oil may have made towards the Escalade. In relevant part, the answers provided:

"2. Has Birk Oil Company ever claimed the purchase and/or related expenses (including but not limited to expenses associated with . . . fuel) of the Escalade on a tax return?

. . . .

"ANSWER: *Counsel is responding to this interrogatory* based upon information obtained from Laura Birk. Laura Birk is the person who handles the books and records of Birk Oil Company.

"No.

. . . .

"4. Has Birk Oil Company ever made a financial contribution, in any amount, to the purchase, and/or related expenses (including but not limited to expenses associated with . . . fuel) of the Escalade? . . .

"ANSWER: *Counsel is responding to this interrogatory* based upon information obtained from Laura Birk. Laura Birk is the person who handles the books and records of Birk Oil Company.

"No. (Emphasis added).

On February 26, 2014, McMaster submitted a second supplement to Justin's response to plaintiffs' first interrogatories. As part of the district court-ordered supplementation, Justin produced a copy of his cell phone bill for the date of the accident. It did not indicate who paid the bill, as requested in the interrogatory. He also produced the declarations page for four insurance policies, including three policies

8

through Bituminous Casualty Corporation and one policy through AMCO Insurance Company.

*First Motion for Sanctions*

On March 17, 2014, plaintiffs filed a motion for sanctions pursuant to K.S.A. 60-237. In the motion, plaintiffs provided a chart of their discovery requests, the district court's ruling with citation to the record, and what defendants had failed to provide. Among the discovery responses that plaintiffs alleged failed to comply with court orders were: (1) information regarding all vehicles Justin owned between January 24, 2006 to the present; (2) information about who paid Justin's cell phone bill and whether he had other cell phones with him at the time of the accident; (3) failure to verify that defendants had disclosed all insurance policies; and (4) how Birk Oil treated vehicles used by Justin, including the Escalade, in its financial records. On April 10, 2014, McMaster filed a reply arguing defendants had complied with the district court's discovery orders. McMaster also included defendants' answers to a number of plaintiffs' discovery requests as exhibits.

*April 14, 2014, Hearing*

On April 14, 2014, the district court held a hearing on plaintiffs' motion for discovery sanctions. The court first addressed the issue of defendants' failure to respond to a request for information regarding all vehicles owned by Justin from January 24, 2006, up to the present. While defendants had provided information regarding some vehicles, plaintiffs did an independent search of records at the Kansas Department of Revenue (KDOR) and found information regarding two vehicles not listed in the response. Plaintiffs had included this information in their motion, including the type of vehicles and their VINs and argued this indicated there may be other vehicles that defendants had failed to disclose. McMaster explained that he believed they had

9

complied with the court's order, and "[w]e're aware of no other vehicles." The court suggested it would impose sanctions against Justin for lying if plaintiffs was able to provide proof of ownership of the two vehicles. The court held that defendants had failed to fully comply with the interrogatory.

The district court also addressed the requests regarding cell phone information. The court noted that at the last hearing it had ordered defendants to supplement their previous answer, but they had only provided a billing printout for one cell phone for the day of the accident.

> "THE COURT: Is there a reason you did not indicate, Mr. McMaster, in response to interrogatories who was paying for the cell phone?
> "MCMASTER: I believe the only order of the Court was we produce the bill for the date of the accident in question. I don't believe the Court addressed—I believe the Court might have specifically said whether the parents pay for it or somebody else doesn't matter.
> "THE COURT: The reason why it would matter is if it was Birk paying for it.
> "MCMASTER: Birk Oil was not paying."

The court found the interrogatory was not correctly answered.

The district court also addressed the issue regarding expenses for the Escalade. In arguing that defendants should not have to provide any documentation regarding expenses associated with the Escalade or other vehicles, McMaster repeatedly told the court that Birk Oil did not contribute financially to the vehicles and, thus, there were no records to turn over. Specifically, McMaster told the court:

> "Birk Oil doesn't contribute to any of [Justin's vehicles] . . . .
> . . . .
> ". . . Because per the Court order, unless the Escalade and if you want to include [Justin's] five vehicles also, unless they show up on the books, they don't need to be

10

produced and our objection is sound. And none of those—All those are personal vehicles owned personally by either Ed, Linda and/or Justin, and they are not expensed or maintained, or anything else per company books.

. . . .

". . . I'd just point out that you were clear. If there's any information connecting Birk Oil to, you know, for instance he used a Birk Oil credit card to buy gas for cars, well there's going to be a ledger somewhere about gas expenses, et cetera, and then we have to produce something. And then you went on further and said if there's not, you don't. And there's not."

Plaintiffs' counsel also argued to the court that there were at least six sets of interrogatories that did not have signed verification pages, including the question regarding insurance. McMaster argued that he mistakenly believed he had provided verification pages for all the answers provided by his clients. As for the questions regarding information provided by Laura Birk, he argued those did not need a verification page because his clients did not answer those questions. He pointed out that the answer specifically said the answer came from him. He also signed the first page of the interrogatories, and under K.S.A. 60-211 he could not do that and answer incorrectly.

The court then questioned McMaster about the problem this posed regarding false information and possible sanctions:

"THE COURT: So what's going to be the end result if come to find out that your clients did have the information and it wasn't provided?

"MCMASTER: Did have what information?

"THE COURT: If in fact the Escalade was claimed on the tax returns.

"MCMASTER: It's not claimed on the tax returns.

"THE COURT: What if it is? The fact that your client told you, you say no it wasn't. What if ultimately it's found that it is and you're the one signed the verification, not them?

"MCMASTER: I signed the pleading.

11

"THE COURT: What's the remedy against them? There isn't any because they didn't sign it.

"MCMASTER: You're absolutely right.

"THE COURT: If they sign it and I find out that they were in fact untrue about it, there is a remedy that can happen.

"MCMASTER: Yes.

"THE COURT: So that's my whole issue here is by you signing off for your clients—

"MCMASTER: But it's—

"THE COURT:  —it poses a problem.

"MCMASTER: These are initial discovery requests. We gave them the identity of the person. They can depose the person and they can ask the person the question under oath. It's the same thing as a verification. I mean they are going to depose Laura Birk.

"THE COURT: I have no doubt.

"MCMASTER: So this is much to do about nothing. Because I swear to tell the truth."

Ultimately, the district court found defendants had failed to comply with discovery requests regarding information about Justin's vehicles, information about Justin's cell phone, verification on the liability insurance, and any financial records Birk Oil may have regarding the Escalade or other vehicles. The court noted:

"Some of the issues the plaintiff complains of I think are issues that are simple enough to fix and could have been done easily enough by the defendants. But where the Court is concerned in regards to sanctions are questions in discovery that not only were requested initially and discussed at one hearing or by telephone, but then ultimately we had to have that hearing that lasted several hours a couple months ago, and now we're back here again on those same issues. Those are the things that are more upsetting to the Court than anything.

"The Court views it by this point if we're having to come back to court more than one occasion on the same issue, it's not a waste of just counsel and parties [*sic*] time. You're bordering on wasting the Court's time. . . .

. . . .

12

"In the Court's opinion what has happened in this particular case is the disregarding of the Court's orders by the defendants or an interpretation of the Court's orders that isn't [borne] out by the transcripts or the Court's orders.

"Most of the interrogatories are fairly straight forward, can be answered simply, but weren't. The information regarding the vehicles, the cell phone information, the verification of insurance policies, all those things were simple enough and could have very well been answered from the start and weren't. But even after the last court hearing that we were in court an entire afternoon then if I remember correctly, it was several hours just like today has been several hours arguing about this, again answers didn't correctly or properly respond to the requests. And the Court does not believe that there's any good faith basis for not doing so. In fact the Court finds there is actually just the opposite.

. . . .

"This case was filed [in] April. It's a year old and we're still talking about written discovery. That's ridiculous. My general policy is civil cases be over within a year. Completely over in a year with trial. We're still talking about written discovery a year later. Way beyond any reasonable fashion to be handling discovery in this case. This has gotten out of hand. Especially as I indicated this discovery is extremely simple to provide."

The district court ordered McMaster and defendants to fully comply with the discovery requests within 10 days of the hearing. The court also imposed a monetary sanction. The court asked plaintiffs' counsel what his hourly rate was. Plaintiffs' counsel responded his rate fluctuated between $185 and $325 an hour, but it was usually in the range of $275 to $300 an hour. The court imposed a $2,500 monetary sanction, explaining, "we spent at least 10 hours of court time, not only in court but on the telephone, in preparation for coming to court. I mean I can't imagine the amount of time in the amount of pleadings here. I've got six inches of pleadings here dealing with discovery." The court ordered McMaster to pay the fine by April 25, 2014.

McMaster filed a motion for reconsideration and a court-ordered supplementation to discovery on April 24, 2014. In the court-ordered supplementation, defendants

13

admitted that Justin's cellphone was on Edward and Linda's plan, and B&B Cooperative Ventures paid for that plan. This was contrary to McMaster's representations to the district court that Birk Oil did not pay the cell phone bill.

*Second Motion for Sanctions*

On May 5, 2014, plaintiffs filed a second motion for sanctions and pointed out that McMaster had failed to pay the $2,500 sanction the district court had imposed on April 14, 2014. Defendants had also failed to produce time cards for the year prior to the accident as required by the court. And while defendants had turned over general ledgers and tax returns for Birk Oil, they had not turned over any corresponding supporting documentation, such as receipts.

At a hearing that same day, the district court declined to rule on the second motion for sanctions. The court did order McMaster to provide supplementary documentation for Birk Oil's tax returns and ledgers, explaining:

> "[Y]ou're going to have to produce the receipts, records, whatever else there is to make heads or tails of whatever those ledgers are or your clients are going to have to. Because just providing to the plaintiff a ledger that says, $10,000.00 fuel, $10,000.00 I don't know what all they say, but several different subcategories with these large amounts of money without designation which vehicles they went to, that's worthless. I don't think that's what the Court ordered. It definitely wasn't what I intended. But we still have time to May til [*sic*] whatever the day is to get that done."

The court also denied McMaster's motion for reconsideration of the first sanctions.

McMaster and defendants eventually turned over a number of Birk Oil's receipts, invoices, and other documents for plaintiffs' counsel to review. Among the documents were a number of receipts from Lewis Oil showing fuel purchases charged to Birk Oil.

14

Some of the receipts identified who purchased the gas and for which vehicle it was purchased. Multiple receipts showed Justin, Linda, and others had made fuel purchases for the Escalade and charged them to the Birk Oil account. This information directly contradicted representations McMaster had made to plaintiffs and the district court that Birk Oil had not financially contributed to the Escalade in any way, including paying for gas.

In late May 2014, plaintiffs' counsel took the depositions of Justin, Edward, Linda, and bookkeeper Laura Birk. Linda, Justin, and Laura all admitted they fueled vehicles at Lewis Oil and charged it to Birk Oil. They all also said the family had a regular practice of fueling vehicles at Lewis Oil and charging it to the company.

Laura explained she would have included the invoice for gas purchases from Lewis Oil in Birk Oil's general fuel expenses and would have included the amount in a general ledger. In preparing tax returns, Laura would have either provided the amount of fuel expenses or the general ledger. Laura confirmed that the receipt with Justin's name and the words "Black Cady" referred to the Escalade.

Laura admitted she had not recently reviewed the receipts in preparation for the case. Additionally, she said no one had asked her to review the receipts. When plaintiffs' counsel asked Laura if anyone had asked her if Birk Oil had ever paid fuel expenses for the Escalade, McMaster objected and instructed Laura not to answer.

Plaintiffs' counsel gave Laura a copy of the answer to the interrogatory regarding fuel expenses. Laura said the answer was truthful because the question pertained to Birk Oil, but she writes checks out of B&B Cooperative Ventures. When plaintiffs' counsel asked if that is why Laura answered "No" to the interrogatory, McMaster objected, saying counsel misstated the evidence because Laura did not answer the question.

On July 2, 2014, plaintiffs filed a motion for leave to file an amended petition. They wished to change the name of Birk Oil to B&B Cooperative Ventures, LLC, d/b/a Birk Oil Company. Information provided by defendants demonstrated that B&B Cooperative Ventures and Birk Oil Company were the same company.

In Justin's original answer to his interrogatory regarding the full name and address of his employer, he provided the following answer: "I have only worked for the family business which is commonly known as Birk Oil Company." In his second supplement to his answers to plaintiffs' first interrogatories, Justin provided the following answer:

> "I have only worked for the family business which is commonly known as Birk Oil Company.
> "Supplementation supplied by counsel. The address of Birk Oil Company at the time of the accident was 900 S. 4th, Burlington, Kansas. The office is being moved to 1044 Highway 75, Burlington, Kansas. . . .
> "COURT ORDERED SUPPLEMENTATION:
> "a. The full name and address of each employer:
> "B&B COOPERATIVE VENTURES
> "1044 Highway 75
> "Burlington, Kansas."

In their second supplements to plaintiffs' first interrogatories, filed on April 4, 2014, both Edward and Linda provided the following answer to the questions regarding the name and address of their employer:

> "I work at the family business that is commonly known as Birk Oil Company.
> "COURT ORDERED SUPPLEMENTATION:
> "a. The full name and address of each employer:

16

"B&B COOPERATIVE VENTURES, LLC

"1044 Highway 75

"Burlington, Kansas."

In her deposition, Linda stated people referred to the company as both Birk Oil and B&B. She also said the building housing the company has a sign that says "Birk Oil Company" and a sign that says "B&B Oil Field Services" on the front. Laura testified she called the company "either or both."

In his deposition, Justin stated he used the names B&B and Birk Oil interchangeably.

On July 24, 2014, McMaster filed corrections to Edward's and Linda's interrogatory answers. The corrections changed the name of their employer from B&B Cooperative Ventures, LLC to B&B Cooperative Ventures. On August 4, 2014, McMaster filed a motion in opposition to plaintiffs' motion to amend his petition. McMaster argued that B&B Cooperative Ventures, LLC, did not exist, so plaintiffs could not name it as a party to the lawsuit or hold it liable under a theory of respondeat superior. Apparently, an attorney for the company had registered it as an LLC in 2006, but it was later forfeited in 2007.

*Motion for Further Relief*

On July 2, 2014, plaintiffs also filed a motion to compel answers to deposition questions and for further relief. In the motion, plaintiffs argued that McMaster and Laura had made a false representation regarding financial connections between Birk Oil and the Escalade. Plaintiffs sought to compel Laura to provide answers to the deposition questions to which McMaster objected. Plaintiffs also sought further sanctions, which were laid out more fully in a supplemental memorandum. McMaster filed a response

17

arguing only that the information plaintiffs sought from Laura at her deposition was privileged.

*August 22, 2014, Hearing*

On August 22, 2104, the district court held another hearing to address a number of motions. The court first addressed plaintiffs' motion to file an amended petition to more accurately state the name of Birk Oil. McMaster argued that Birk Oil Company, B&B Cooperative Ventures, and B&B Cooperative Ventures, LLC, were all distinct entities, so the names could not be substituted for each other, and simply changing the name in the petition would add to the confusion in the case. The court disagreed, stating: "Everyone understands. There's no confusion." The court granted the motion dating back to the time of the original petition.

The district court also addressed plaintiffs' motion to compel answers to deposition questions and for further relief. The court noted one of the long-standing issues in the case was whether there was any financial connection between Birk Oil and the Escalade. McMaster and defendants had indicated to the court there was not. Based on the recent discovery, however, there appeared to be a connection; thus, either Laura lied or McMaster lied in answering the questions. Additionally, the court noted, McMaster did not take any action to correct the answers regarding fuel expenses.

McMaster argued that the answer was not a misrepresentation; rather, it was a result of miscommunication. The question only asked if Birk Oil contributed financially to the Escalade. The question did not make clear that it was also referring to B&B. According to McMaster, Laura reasonably interpreted the question as referring only to Birk Oil, a defunct entity, and not B&B.

18

The district court did not accept McMaster's explanation. It granted plaintiffs' motion to compel and ordered a new deposition of Laura. The court also assessed a $5,000 sanction against McMaster. The court explained:

"I've never seen a case where somebody misrepresents to the Court, not just misrepresent, but when I look back through the transcripts in this particular case, and we've been arguing about this one issue about the payment of fuel expenses for these vehicles of Justin Birk. For a year at least it's been that issue.

"We've had at least three different hearings in court—this is actually the fourth or fifth hearing on this issue. And until today, it's been your position and that you represented to the Court, that there's been no evidence and that none exists, when in fact all along it did. I've never seen that. It's actually very troublesome to the Court. . . . I've never seen the like."

The court noted Laura's deposition answers made it clear that she knew Birk Oil covered fuel expenses for the family's vehicles, even without looking at any receipts or other discovery. The court told McMaster:

"This information was known from the get-go in this particular case as to what the correct answer was to [the question about fuel expenses]. It's . . . wrong and was answered by you.

"Why you would want to stick your neck out for your clients in that fashion, that's beyond me. But now that you've done so, and misrepresented not only to counsel but also to the Court what the true answer was, that's why the Court's imposing these sanctions."

On October 10, 2014, Laura was deposed again in the presence of the district court. At the deposition, Laura testified she understood the court's order from the April 14, 2014, to require production of general ledgers from B&B. She stated if anyone asked her for general ledgers for Birk Oil Company, she would have said none existed. She

also stated that sometime after the April hearing McMaster asked her if B&B ever paid for fuel or similar expenses for the Escalade, and she told him she believed it did.

The district court did not find Laura's deposition testimony credible, telling McMaster,

> "It's very clear to the Court today, you coached your witness very well for her testimony at this deposition today. It's still clear to the Court that you weren't being honest when you answered those interrogatory questions and there's never been a misunderstanding by any party in this case as to a reference to Birk Oil who that was referencing and what information was being requested."

On November 17, 2014, the district court filed a journal entry for the August 22, 2014 hearing. The court imposed a $5,000 sanction as ordered on August 22, 2014. It also imposed a $2,500 sanction that was previously ordered at the April 14, 2014, hearing. The court had ordered McMaster to pay that sanction by April 25, 2014, but McMaster had not done so. The court imposed a total sanction of $7,500 to be made payable to plaintiffs' counsel by August 29, 2014. McMaster paid the full amount by August 29, 2014, but he paid it to the clerk of the district court rather than plaintiffs' counsel.

On May 11, 2015, plaintiffs and defendants entered an agreement pursuant to *Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79 (1990). The defendants agreed to assign their rights against their insurer for breach of contract, bad faith, or both to plaintiffs. In exchange, plaintiffs would not execute any judgment entered against defendants. Furthermore, both parties agreed the case would go to a bench trial, and neither party would appeal the decision of the district court. 247 Kan. 296, Syl. ¶ 6.

On May 20, 2015 Progressive filed a motion to intervene in order to file a motion for an order compelling McMaster to withdraw. Progressive stated it was the liability

insurance carrier for defendants, and it originally hired McMaster to represent defendants. Due to McMaster's handling of the case, however, Progressive had requested that he withdraw. Progressive noted the court had repeatedly sanctioned McMaster for "obstreperous conduct during discovery," and he had failed to respond to hundreds of requests for admissions to the detriment of his clients. On May 22, 2015, McMaster, as well as two other attorneys from his firm, withdrew from the case.

The district court held a bench trial in the case on June 1-3 and 10-11, 2015. The court found in favor of plaintiffs and awarded over $6 million in damages. The court found Justin was liable for wrongful death; Edward and Linda were liable under the theory of negligent entrustment; and B&B/Birk Oil was liable under the theory of respondeat superior. The journal entry was filed July 15, 2015.

On September 7, 2015, McMaster filed a motion to intervene in order to appeal the $7,500 monetary sanction. He argued he had a substantial interest in the subject matter of the lawsuit because the court had ordered him to pay the monetary sanction, and he had paid it. Additionally, he had filed a timely motion to intervene, and no other party could adequately represent his interest.

On September 9, 2015, the district court held a hearing on the allocation of the judgment. The court also addressed McMaster's motion to intervene, ultimately denying the motion as untimely. On September 16, 2015, the district court entered a journal entry on allocation of the judgment and approval of attorney fees.

On September 28, 2015, the district court filed a journal entry denying McMaster's motion to intervene. The court noted that intervention depends on three factors: (1) timely application; (2) a substantial interest in the subject matter; and (3) lack of adequate representation of the intervenor's interests. The court found the parties to the case did not adequately represent McMaster's interest. The court expressed doubt

that McMaster had a substantial interest in the subject matter. Ultimately, though, the court declined to decide this issue, because it found McMaster's motion was untimely.

According to the district court, sanctions against nonparties are immediately appealable. In support of this rule, the court cited to *David v. Hooker, Ltd.*, 560 F.2d 412, 415-16 (9th Cir. 1977), which the Kansas Supreme Court cited with approval in *Reed v. Hess*, 239 Kan. 46, 54, 716 P.2d 555 (1986). The court identified several possible dates which could have started McMaster's 30-day time period to appeal the sanctions but found the motion was untimely as to all of them. Because McMaster filed his motion to intervene well outside even the latest time period for appeal, the court found his motion untimely and denied it.

On October 30, 2015, McMaster filed a notice of appeal and a motion for additional time to file his notice of appeal. McMaster argued he had not received the journal entry denying his motion to intervene until October 29, 2015. The district court found excusable neglect and granted McMaster an additional 30 days to file his appeal. McMaster filed an amended notice of appeal on November 2, 2015.

*Does This Court Have Jurisdiction to Hear McMaster's Appeal?*

In their original briefs, the parties only argued whether the district court erred in denying McMaster's motion to intervene and in imposing sanctions on McMaster. However, independent research suggested McMaster may not have needed to file a motion to intervene in order to appeal. See *Raley v. Hyundai Motor Co., Ltd.,* 642 F.3d 1271, 1275 (10th Cir. 2011); *Subway Restaurants, Inc. v. Kessler*, 273 Kan. 969, 976, 46 P.3d 1113 (2002). If he did not have to file a motion to intervene, it raised the issue of whether his notice of appeal was timely as to final judgment in the case and subsequently whether we have jurisdiction to hear McMaster's appeal. The parties were

22

ordered to prepare supplemental briefs on this issue. We address this issue first, as it is determinative of whether we will reach the merits of McMaster's appeal.

*Did McMaster Need to File a Motion to Intervene?*

The right to appeal is entirely statutory and is not contained in the Unites States or Kansas Constitutions. Subject to certain exceptions, Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statutes. *Harsch v. Miller*, 288 Kan. 280, 287, 200 P.3d 467 (2009). An appellate court has a duty to question jurisdiction on its own initiative. When the record discloses a lack of jurisdiction, the appellate court must dismiss the appeal. *Kaelter v. Sokol*, 301 Kan. 247, 249-50, 340 P.3d 1210 (2015).

Whether a sanctioned attorney must file a motion to intervene in order to appeal a sanctions order is an issue of first impression in Kansas. In Kansas, generally only an aggrieved party may appeal a judgment. *Blank v. Chawla*, 234 Kan. 975, 978, 678 P.2d 162 (1984); K.S.A. 60-2103(b) ("The notice of appeal shall specify the parties taking the appeal."). In several cases, Kansas appellate courts have heard attorney appeals of sanctions orders. The attorneys in those cases do not appear to have filed motions to intervene, but the cases also did not address whether the attorneys were properly parties for the purposes of appeal. *State v. Murphy*, 278 Kan. 228, 91 P.3d 1232 (2004); *Subway*, 273 Kan. 969; *In re Marriage of Adugna*, 32 Kan. App. 2d 1095, 95 P.3d 646 (2004); *Bank of America, N.A. v. Boozer*, No. 105,062, 2011 WL 6943079 (Kan. App. 2011) (unpublished opinion); *Dodge v. Davis Remodeling Repair and Custom Const., Inc.*, No. 104,192, 2011 WL 1877842 (Kan. App. 2011) (unpublished opinion).

Federal courts also generally follow a rule that "only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment." *Marino v. Ortiz*, 484 U.S. 301, 304, 108 S. Ct. 586, 98 L. Ed. 2d 629 (1988). Similar to K.S.A. 60-2103, Fed.

23

Rule of Appellate Procedure 3(c) also requires a notice of appeal to "specify the party or parties taking the appeal." Nevertheless, federal courts recognize several exceptions to this rule. See, *e.g.*, *Raley*, 642 F.3d at 1275 (listing subjects of civil contempt orders, sanctioned attorneys, class members who object to a judgment as possible exceptions to the rule). One such exception is that when a court sanctions a nonparty, such as an attorney, that nonparty may appeal. See, *e.g.*, *Keach v. County of Schenectady*, 593 F.3d 218, 223 (2d Cir. 2010); *Nisus Corp. v. Perma-Chink Systems, Inc.*, 497 F.3d 1316, 1319 (Fed. Cir. 2007); *Weeks v. Independent School Dist. No. I-89 of Oklahoma County, OK, Bd. of Educ.*, 230 F.3d 1201, 1207 (10th Cir. 2000). And while the United States Supreme Court does not appear to have directly addressed a nonparty attorney's right to appeal a sanctions order, it has held "[t]he right of a nonparty to appeal an adjudication of contempt cannot be questioned." *Catholic Conf. v. Abortion Rights Mobilization*, 487 U.S. 72, 76, 108 S. Ct. 2268, 101 L. Ed. 2d 69 (1988). See also *Cunningham v. Hamilton County*, 527 U.S. 198, 119 S. Ct. 1915, 144 L. Ed. 2d 184 (1999) (addressing the appeal of a nonparty attorney who did not formally intervene).

In addition to identifying specific exceptions to the rule disallowing nonparty appeals, some federal appellate circuits have also developed tests for determining when a nonparty may be appeal. For instance, in the Tenth Circuit, a nonparty may be appeal an adverse judgment when the nonparty: "(1) personally appeared in district court; (2) suffered a real and concrete injury as a result of a district court ruling that is entitled to preclusive effect; and (3) possess interests that would not, on appeal, be adequately represented by the named parties to the district court lawsuit." *Raley*, 642 F.3d at 1275. Other circuits use substantially similar tests. See, *e.g.*, *Castillo v. Carmon County, Texas*, 238 F.3d 339, 349 (5th Cir. 2001); Steinman, *Irregulars: The Appellate Rights of Persons Who are Not Full-Fledged Parties*, 39 G. L. R. 411, 485-86 (2005). A sanctioned attorney meets the requirements of these tests. *Raley*, 642 F.3d at 1275.

24

While a sanctioned attorney may not need to formally intervene to appeal a sanctions order, independent research did not uncover any caselaw indicating an attorney could not file a motion to intervene in such cases. In fact, in a case dealing with a different type of nonparty appeal, the United States Supreme Court noted the Second Circuit may allow an exception for nonparty appeals when a trial court's judgment affects a nonparty's interest. The Court added, however, that "the better practice is for such a nonparty to seek intervention for purposes of appeal." *Marino*, 484 U.S. at 304.

Gant argues McMaster did not need to file a motion to intervene. In support of his argument, he cites to *United States v. Hunter*, 548 F.3d 1308 (10th Cir. 2008). In that case, the relatives of a crime victim were attempting to appeal a criminal conviction. The State argued the relatives could not appeal the conviction because 28 U.S.C. § 1291 (2006), which limits appellate jurisdiction to the final decisions of district courts, presented a jurisdictional bar. The Tenth Circuit noted that the State's argument "misse[d] the mark" because § 1291 "constrains what may be appealed, not who may bring such appeals." 548 F.3d at 1311.

Gant argues that the holding in *Hunter* means "the question of who may appeal is not jurisdictional," thus there was nothing preventing McMaster from filing an appeal. What Gant does not acknowledge, however, is that later in Hunter the Tenth Circuit added, "the issues of jurisdiction under § 1291 and non-party appellate rights are distinct." Therefore, just because an appellate court has jurisdiction to hear the appeal of a final judgment does not determine whether a nonparty has a right to appeal that judgment. 548 F.3d at 1312. Furthermore, whether a nonparty has standing to appeal is a jurisdictional issue. See *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 750-51, 189 P.3d 494 (2008) ("Standing is a jurisdictional question.").

McMaster argues that K.S.A. 60-2103 limits the right to appeal to named parties. Kansas caselaw does not recognize any exceptions to this requirement. Prior Kansas

cases involving the appeals of sanctioned attorneys did not address whether the attorney needed to become a party to the litigation to appeal. Further, federal cases such as *Raley* are not controlling. As such, McMaster contends he had to file a motion to intervene to appeal the sanctions order.

McMaster is correct that K.S.A. 2016 Supp. 60-2103 requires a notice of appeal to include the name of the party taking the appeal. He is also correct that prior Kansas cases dealing with the appeal of attorney sanctions did not question jurisdiction. Nonetheless, Kansas appellate courts have a duty to question jurisdiction, suggesting the courts in those cases did not see jurisdictional issues. See *Kaelter*, 301 Kan. at 249-50.

Based on previous Kansas cases, and looking to federal courts as persuasive authority, McMaster likely did not need to file a motion to intervene. This does not mean he erred in doing so. Kansas caselaw was not clear on whether McMaster needed to file a motion to intervene, and McMaster had also withdrawn from the case and was no longer representing either party. Additionally, the United States Supreme Court's comments in *Marino* suggest that even if McMaster did not need to file a motion to intervene, it was better for him to do so.

*Did McMaster's Motion to Intervene Toll the Time for Appeal?*

Whether a motion to intervene tolls the time for appeal is also an issue of first impression in Kansas. Ordinarily, the Court of Appeals may hear an appeal as a matter of right from any final judgment. K.S.A. 2016 Supp. 60-2102(a)(4). A judgment is final when it "disposes of the entire merits of a case and leaves no further questions or possibilities for future directions or actions by the lower court." *Kaelter*, 301 Kan. at 249-50.

If an outstanding motion affects the finality of judgment in a case, it will also delay the running of the time for appeal. For example, an outstanding motion for attorney fees does not toll the time for appeal. *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 246 Kan. 371, 374, 789 P.2d 211 (1990). This is because attorney fees are not compensation for a plaintiff's injury, and the legislature has traditionally regarded such fess as costs awarded to the prevailing party. 246 Kan. at 374. On the other hand, an outstanding motion for sanctions pursuant to K.S.A. 2016 Supp. 60-211 will toll the time for appeal because resolution of the motion is tied to the facts of the case and affects the finality of judgment. *Smith v. Russell*, 274 Kan. 1076, 1081, 58 P.3d 698 (2002).

A motion to intervene arguably affects the finality of judgment. Any such motion will be tied to the facts of the case, and, as McMaster argues, it will leave open a question for the lower court to decide. More importantly, a motion to intervene should toll the time to appeal for pragmatic reasons. Generally, a potential intervenor does not have the right to appeal until the district court has ruled on the motion to intervene. If the court grants the motion, the intervenor may appeal the final judgment. If the court denies it, the proposed intervenor may appeal the court's denial.

Gant argues that McMaster did not need to file a motion to intervene, thus the motion was moot when McMaster filed it, and it should not toll the time for an appeal. In support of his argument, Gant cites to several federal cases in which nonparties appealed a judgment without intervening. Nonetheless, Gant does not provide any authority that someone who does not need to file a motion to intervene *cannot* file a motion to intervene. Moreover, he does not provide any authority that such a motion would be moot and would not toll the time for appeal.

Gant further argues McMaster's motion did not toll the time for appeal because it is not one of the posttrial motions which may toll the time for appeal. According to K.S.A. 60-2103(a), a party must file an appeal within 30 days unless it timely files one

27

of the following motions: renewed motion for judgment as a matter of law pursuant to K.S.A. 60-250(b); motion to amend judgment or make additional findings pursuant to K.S.A. 60-252(b); motion for a new trial pursuant to K.S.A. 60-259; and motion for a new trial pursuant to K.S.A. 60-252. While it is true a motion to intervene is not one of the posttrial motions enumerated in K.S.A. 60-2103(a), this argument fails to address the main issue: whether a motion to intervene filed before judgment in a case affects the finality of that judgment.

McMaster argues the district court's judgment on September 16, 2015, was not final. He argues the court did not issue a final judgment in the underlying case until September 22, 2015. McMaster filed his notice of appeal on October 30, 2015. This was more than 30 days from either judgment. If his motion to intervene did not toll the time to appeal, his notice of appeal was late as to both judgments. If his motion to intervene did toll the time to appeal, he did not need to file a notice of appeal until after the district court denied his motion. Thus, this court does not need to address this issue to resolve this appeal.

Additionally, McMaster argues the district court did not err in granting him additional time to file a notice of appeal as to the denial of his motion to intervene. The question at issue here, though, is whether he had to file a timely notice of appeal as to the district court's judgment on September 16 or September 22. Thus, this argument is not relevant to the question before this court.

McMaster did not need to file a motion to intervene. Nevertheless, since he was a nonparty to the litigation, he did not err in doing so. Because a motion to intervene affects the finality of judgment, McMaster did not need to file a notice of appeal until the district court ruled on his motion to intervene. The court granted McMaster additional time to file a notice of appeal, thus his notice of appeal was timely as to the denial of his motion. As a result, we have jurisdiction to hear McMaster's appeal.

28

*Did the District Court Err in Denying McMaster's Motion to Intervene?*

Having established that we have jurisdiction to hear this appeal, we will now address the issues raised by the parties. McMaster first argues the district court erred in denying his motion to intervene to appeal the orders of sanctions. We review the denial of a motion to intervene for an abuse of discretion. *Montoy v. State*, 278 Kan. 765, 766, 102 P.3d 1158 (2005). McMaster argues the district court should have allowed him to intervene under K.S.A. 60-224(a). K.S.A. 2016 Supp. 60-224(a) provides:

> "(a) On timely motion, the court must permit anyone to intervene who:
> (1) Is given an unconditional right to intervene by a statute; or
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter substantially impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

The Kansas Supreme Court has construed this statute to mean the right to intervene depends on the concurrence of three factors: (1) timely application; (2) a substantial interest in the subject matter, and (3) a lack of adequate representation of the intervenor's interests. *Montoy*, 278 Kan. 765, Syl. ¶ 2.

The main issue in this appeal centers on whether discovery sanctions imposed on an attorney who no longer represents a party to the litigation are immediately appealable. This appears to be an issue of first impression in Kansas. Both parties rely on *Reed* to support their position.

In *Reed*, the Kansas Supreme Court held:

"Discovery orders and sanctions in the nature of civil penalties for violation of such orders as to parties are normally deemed interlocutory and thus nonappealable by the parties as interlocutory appeals because these orders can be reviewed and corrected when final judgment is entered by including them in the appeal from the final judgment." 239 Kan. at 53.

McMaster argues the rule as to parties to litigation must also apply to attorneys representing those parties because of the nature of the attorney-client relationship. While attorneys may have a personal interest in immediately appealing a discovery sanction, attorneys must put the interests of their client first. Requiring attorneys to appeal sanctions as a party as well as continuing to represent a party would violate this rule.

Plaintiffs argue that the rule as to parties does not apply to attorneys because attorneys are nonparties. Gant points out that *Reed* noted, "Application of the rule concerning a *nonparty* is demonstrated in *David v. Hooker, Ltd.*, 560 F.2d 412 (9th Cir. 1977)." 239 Kan. at 54. In *David*, the Ninth Circuit held, "Although discovery orders and sanctions in the form of civil penalties are held in most cases to be interlocutory and hence non-appealable as to the parties involved in the suit, certain exceptions are recognized in cases involving orders and sanctions against non-parties." 560 F.2d at 415. The ultimate consideration is whether the order or sanction was final as to the nonparty. See 560 F.2d at 416-17.

The rule as stated in *Reed* and *David* is likely not controlling in this case. First, *David* did not involve sanctions against an attorney, but the managing agent of a party. 560 F.2d at 414-17. And while the Ninth Circuit did establish a rule that sanctions against attorneys were immediately appealable, the United States Supreme Court later abrogated it. See *Telluride Management Solutions, Inc. v. Telluride Inv. Group*, 55 F.3d 463, 466 (9th Cir. 1995), *abrogated by Cunningham*, 527 U.S. 198.

In *Cunningham*, the United States Supreme Court held that an order imposing sanctions on an attorney pursuant to Federal Rule of Civil Procedure 37 is not a final decision and is not immediately appealable even if the attorney is no longer representing a party in the case. 527 U.S. at 204, 210. In that case, a district court affirmed monetary sanctions a magistrate judge had imposed on Cunningham, an attorney, under Rule 37(a)(4) for multiple discovery abuses. The district court also granted motions to disqualify Cunningham as counsel for the plaintiffs. Cunningham immediately appealed the decision affirming the sanctions even though proceedings in the case continued in the district court. The Sixth Circuit dismissed the appeal for lack of jurisdiction, finding the sanctions order was not immediately appealable. 527 U.S. at 201-02.

On review, the United States Supreme Court affirmed the Sixth Circuit's ruling. The Court explained that the Rule 37 sanction was not an appealable final judgment because it did not end the litigation nor leave the court to only execute its judgment. 527 U.S. at 204. The court noted the sanctions might be appealable under the collateral order doctrine, which provides an exception to the rule that only final judgments are appealable. In order to qualify under the collateral order doctrine, a decision must be conclusive, resolve an important question separate from the merits, and be effectively unreviewable on appeal from the final judgment. 527 U.S. at 204.

The *Cunningham* Court recognized that the sanctions order was conclusive, but found that the order did not meet the other two qualifications. First, the Court noted appellate review of a sanctions order is not completely separate from the merits of the case. In order to evaluate the appropriateness of a sanction, an appellate court may have to "inquire into the importance of the information sought or the adequacy or truthfulness of a response." 527 U.S. at 205. This analysis "would differ only marginally from an inquiry into the merits." 527 U.S. at 206. The Court recognized not all discovery sanctions will be intertwined with the merits of the case, but the Court rejected a case-by-case approach to determining if an order is sufficiently collateral. 527 U.S. at 206.

31

The *Cunningham* Court also found that a sanctions order was not effectively unreviewable on appeal from a final judgment. 527 U.S. at 206. As to this point, Cunningham had argued that (1) someone who is not a party to a judgment generally may not appeal from it; and (2) contempt orders imposed on witnesses who disobey discovery orders are immediately appealable, and the courts should treat her sanctions order the same way. The Court rejected both these arguments. 527 U.S. at 206.

First, the *Cunningham* Court noted that as nonparties, attorneys are distinguishable from witnesses:

> "Unlike witnesses, whose interests may differ substantially from the parties', attorneys assume an ethical obligation to serve their clients' interests. *Evans v. Jeff D.*, 475 U.S. 717, 728 (1986). This obligation remains even where the attorney might have a personal interest in seeking vindication from the sanctions order. See *Richardson-Merrell*, [472 U.S. 424,] 434-435. . . . The effective congruence of interests between clients and attorneys counsels against treating attorneys like other nonparties for purposes of appeal. Cf. *United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 78 (1988)." 527 U.S. at 206-07.

Additionally, the *Cunningham* Court reasoned that a finding of contempt is significantly different from a Rule 37 sanction. While civil contempt is designed to compel compliance with an order of the court, "a Rule 37(a) sanctions order lacks any prospective effect and is not designed to compel compliance." 527 U.S. at 207. Rather the purpose of a Rule 37(a) sanction is to "protect courts and opposing parties from delaying or harassing tactics during the discovery process." 527 U.S. at 208. Allowing immediate appeal of these sanctions orders would undermine their effectiveness, because it could further delay proceedings. 527 U.S. at 209.

Finally, Cunningham argued that an attorney who is no longer representing a party in the case should be able to immediately appeal even if attorneys may not ordinarily do so. The Court declined to adopt such a rule:

> "Such a rule could not be easily administered. For example, it may be unclear precisely when representation terminates, and questions likely would arise over when the 30-day period for appeal would begin to run under Federal Rule of Appellate Procedure 4. The rule also could be subject to abuse if attorneys and clients strategically terminated their representation in order to trigger a right to appeal with a view to delaying the proceedings in the underlying case. While we recognize that our application of the final judgment rule in this setting may require nonparticipating attorneys to monitor the progress of the litigation after their work has ended, the efficiency interests served by limiting immediate appeals far outweigh any nominal monitoring costs borne by attorneys. For these reasons, an attorney's continued participation in a case does not affect whether a sanctions order is 'final' for purposes of § 1291." 527 U.S. at 209.

While *Cunningham* addresses sanctions under the Federal Rules of Civil Procedure, it is still instructive in this case. Because the Kansas Code of Civil Procedure is modeled after the Federal Rules of Civil Procedure, Kansas courts may look to federal court decisions for guidance on interpretation of these statutes. *Reed*, 239 Kan. at 53. In particular, K.S.A. 60-237 is modeled after Rule 37, so the *Cunningham* case is pertinent to the issue at hand. See *Lorson v. Falcon Coach, Inc.*, 214 Kan. 670, 677, 522 P.2d 449 (1974). The Kansas Supreme Court also acknowledged it "generally follow[s] the United States Supreme Court application of the collateral order doctrine." *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 616, 244 P.3d 642 (2010).

Furthermore, the holding in *Cunningham* comports with other Kansas caselaw. In *Subway*, 273 Kan. 969, the Kansas Supreme Court held that an attorney's appeal of sanctions for misconduct was untimely because he did not file the appeal within 30 days of final judgment in the case. 273 Kan. at 975-76. In *Svaty*, the Kansas Supreme Court

33

held that "discovery orders that do not impose a sanction on a nonparty do not qualify for appeal under the collateral order doctrine even if the order is potentially adverse to a claim of [attorney-client] privilege." The *Svaty* court declined to address whether the imposition of a sanction would render the order immediately appealable. 291 Kan. at 616.

Based on the holding in *Cunningham*, McMaster could not appeal the sanctions orders until final judgment in the case. McMaster filed his motion to intervene on September 7, 2015. The case reached final judgment on September 16, 2015, when the district court entered its journal entry of allocation of the judgment. Because McMaster filed his motion to intervene shortly before the final judgment, his motion was not untimely, and the district court erred in dismissing his motion on this basis.

Plaintiffs also argues we should uphold the district court's denial of McMaster's motion because McMaster did not have a substantial interest in the subject matter of the case. As plaintiffs see it, because McMaster filed his motion to intervene shortly before the apportionment hearing, McMaster was attempting to intervene in that hearing. McMaster, however, did not have a viable claim to any part of the judgment; thus, he did not have a "substantial interest." Therefore, even if the district court was wrong in finding the motion was untimely, McMaster's motion should have been denied anyway, and the district court's ruling is affirmed. See *Montoy* , 278 Kan. at 768 ("If a trial court reaches the right result, its decision will be upheld even though the trial court relied upon the wrong ground or assigned erroneous reasons for its decision.").

Here, the district court sanctioned McMaster for discovery violations related to the merits of the case. As the party aggrieved by the sanctions order, McMaster may appeal it. See *Weeks v. Independent School Dist. No. I-89 of Oklahoma, OK., Bd. of Educ.*, 230 F.3d 1201, 1207 (10th Cir. 2000) ("Counsel have standing to appeal orders that directly aggrieve them."); *Northern Natural Gas Co. v. ONEOK Field Services Co.*,

296 Kan. 906, 916, 296 P.3d 1106 (2013) ("[A] party seeking to appeal must be aggrieved by the judgment or order from which the appeal is taken."). Thus, while McMaster did not have a claim to the judgment, he still had a right to appeal the sanctions order, which arguably gave him a substantial interest in the case.

In conclusion, the district court abused its discretion when it dismissed McMaster's motion to intervene as untimely. The court's decision was based on an error of law, because the sanctions orders were not appealable until after final judgment. Additionally, McMaster had a right to appeal the orders. Because the district court erred in denying McMaster's motion to intervene, we may address the merits of McMaster's argument regarding the district court's sanctions. See *Hukle v. City of Kansas City*, 212 Kan. 627, 632-33, 512 P.2d 457 (1973) (addressing merits of intervenor's appeal of judgment after finding district court erred in denying motion to intervene).

*Did the District Court Err in Imposing Sanctions on McMaster?*

Next, McMaster argues the district court erred when it imposed sanctions on him. He contends the district court abused its discretion in ordering sanctions for a litany of reasons: (1) The district court did not comply with K.S.A. 2016 Supp. 60-237(b)(2)(C) in imposing sanctions; (2) the court did not afford him due process; (3) the court's factual findings were not supported by substantial competent evidence; (4) the district court's imposition of sanctions was guided by erroneous legal conclusions; and (5) the district court erred in sanctioning him for zealously representing his clients.

As a preliminary matter, McMaster's arguments regarding the impropriety of the district court's sanctions is almost entirely predicated on a misrepresentation of the record. He primarily focuses on the court's first sanction and contends he was sanctioned solely because Justin lied about what vehicles he owned. The record directly contradicts this representation. As the court explained in its ruling from the bench on April 14,

35

2014, McMaster was sanctioned for delaying the proceedings for months by refusing to comply with reasonable court orders from October 7, 2013, and January 23, 2014, regarding Birk Oil's financial records, insurance policies, and employment records, as well as interrogatory answers regarding Justin's vehicles.

McMaster also asserts there was "mass confusion" regarding what business entity plaintiffs intended to sue. This does not appear to the case. In their answers to plaintiffs' interrogatories, Edward, Linda, and Justin all stated they worked for a family business commonly known as Birk Oil Company, then supplemented those answers with the name and address of B&B Cooperative Ventures. In their depositions, Linda, Justin, and Laura all stated that the names B&B and Birk Oil were interchangeable and referred to the same business entity. Additionally, the district court stated on the record several times that there was no confusion regarding this issue.

*Did the District Court Comply with K.S.A. 60-237 in Imposing Sanctions on McMaster?*

As for the sanctions, McMaster first argues the district court abused its discretion in sanctioning him because it did not comply with K.S.A. 2016 Supp. 60-237(b)(2)(C). We review a district court's award of sanctions, including attorney fees, for discovery violations for an abuse of discretion. *Canaan v. Bartee*, 276 Kan. 116, 135, 72 P.3d 911, *cert denied* 540 U.S. 1090 (2003). The district court did not cite to a particular statute as the basis for the monetary sanctions imposed on McMaster. In the first and second motions for sanctions, plaintiffs requested sanctions pursuant to K.S.A. 2016 Supp. 60-237(b)(2)(A) and (C). In a supplemental motion filed after the motion for further relief plaintiffs again requested monetary sanctions under K.S.A. 2016 Supp. 60-237(b)(2)(C) as well as other remedies available under K.S.A. 2016 Supp. 60-237. Thus, as McMaster notes, the court appears to have imposed monetary sanctions under K.S.A. 2016 Supp. 60-237(b)(2)(C).

K.S.A. 60-237(b) governs failure to comply with court orders regarding discovery. K.S.A. 2016 Supp. 60-237(b)(2)(C) states:

"Instead of, or in addition to, the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

A district court should only impose the penalties authorized by K.S.A. 60-237(b)(2) if a party is able to comply with an order but fails to do so due to his own conduct or the circumstances of the case. See *Beal v. Rent-A-Center of America Inc.*, 13 Kan. App. 2d 375, 379, 771 P.2d 553 (1989). "'While 60-237(b)(2) applies to all failures to comply, either willful or not, the presence or lack of good faith in the parties is relevant to the orders which should be given and the severity of the sanctions imposed. [Citation omitted].'" 13 Kan. App. 2d at 379. A district court should use sanctions in order to accomplish the objects of discovery rather than to punish. *City of Neodesha v. BP Corporation,* 50 Kan. App. 2d 731, 777, 334 P.3d 830 (2014), *rev. denied* 302 Kan. 1008 (2015).

In his argument regarding this issue, McMaster only challenges the district court's first sanction and relies solely on his assertion that the court sanctioned him because Justin did not provide a truthful answer regarding all the vehicles he had owned. Even if the court did abuse its discretion regarding Justin's answer, McMaster has not argued that the court failed to comply with the statute regarding the other reasons for his first sanction. He also has not argued the court failed to comply with the statute regarding his second sanction. Thus, he has abandoned any argument as to these issues. See *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011) (issue not briefed by the appellant is deemed waived or abandoned).

The record demonstrates that the district court complied with K.S.A. 2016 Supp. 60-237(b)(2)(C). The statute requires the district court to determine whether the failure to comply with court orders was substantially justified or the award unjust. As for the first sanctions, the court noted it had already held two hearings on the issue of discovery and issued a written order regarding what information and documents were discoverable. While McMaster claimed the court's orders were unclear or that he had simply misinterpreted them, the court found the record, including the transcripts of the hearing, did not support McMaster's arguments. A review of the record indicates the court was clear regarding what information was discoverable and what interrogatories and production requests defendants had to answer.

As for Justin's answer to the interrogatory specifically, the district court ordered defendants at the January 23, 2014, hearing to answer the interrogatory regarding Justin's vehicles. The interrogatory asked for information regarding all vehicles Justin had owned from June 24, 2006, to the present. Plaintiffs had noted in the first motion for sanctions that the information had been obtained through the KDOR that Justin owned other vehicles not listed in his answer. Plaintiffs included the types of vehicles as well as their VINs. McMaster could have conducted a simple inquiry as to whether Justin actually owned these vehicles by asking Justin or conducting his own search of KDOR records. McMaster himself admits that this information was "easily accessible." At the hearing, though, McMaster told the court "we're aware of no other vehicles," and he was "not certain" about vehicles Justin may have owned after the accident. Thus, McMaster and defendants had not justifiably failed to comply with court orders.

As for the second sanction, the district court had determined by that point that McMaster had made false representations to the court, both in answering interrogatories and in oral argument before the court. Specifically, McMaster had answered two interrogatories regarding Birk Oil's financial contribution to the Escalade based on

38

information from Laura. Those answers turned out to be false. Furthermore, Laura's deposition answers indicated that the correct answer was easily attainable with reasonable inquiry. She knew, without looking at records, that Birk Oil paid for gas expenses for the family's personal vehicles. She also indicated she had not reviewed any records prior to providing information relevant to those interrogatories, nor had anyone asked her to.

Moreover, at the earlier April 14, 2014, hearing, McMaster told the district court that the court could not sanction his clients if the answers he provided to those interrogatories were false, because defendants had not verified them. He also argued his answers had to be true because he was legally obligated to tell the truth. Based on McMaster's own admission, the court could only sanction him for these untruths. Since K.S.A. 2016 Supp. 60-237(b)(2)(C) specifically authorizes district court's to impose sanctions on attorneys, the court was within its statutory authority in imposing sanctions on McMaster.

Finally, McMaster argues the purpose of the sanction was purely punishment. He reasons that plaintiffs already had the information regarding the two vehicles Justin had not disclosed, so the sanction could not have facilitated discovery. As the district court explained, however, it sanctioned McMaster for various failures to comply that delayed discovery for months and took up a significant amount of the court's and plaintiffs' counsel's time.

In determining whether the district court complied with K.S.A. 2016 Supp. 60-237(b)(2)(C) in this case, McMaster urges us to adopt a three-part test used to determine the appropriateness of dismissal or default judgment as a discovery sanction. He argues we should use this test whenever a district court sanctions counsel rather than a party to the litigation. He does not provide any support for this proposition, nor does he explain why this test would be appropriate under these factual circumstances. Therefore,

39

McMaster has not adequately briefed this issue. See *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015) (failure to support a point with pertinent authority is akin to failing to brief the issue and abandonment of the point).

*Did the District Court Deny McMaster Due Process Before Imposing Sanctions?*

Next, McMaster argues the district court denied him due process when it imposed monetary sanctions on him, because it did not grant him an opportunity to present his case. As McMaster points out, when a district court exercises its inherent power to sanction an attorney, it must provide notice and an opportunity for a hearing on the record. *Knutson Mortgage Co. v. Coleman*, 24 Kan. App. 2d 650, 654, 951 P.2d 548 (1997). He contends that when a district court exercises its statutory right to sanction, the party being sanctioned also has a right to notice and a hearing. While he cites no authority for this proposition, the record demonstrates he was afforded notice and a hearing before the district court imposed sanctions.

As for the first sanctions, plaintiffs filed a motion for sanctions pursuant to K.S.A. 60-237 on March 17, 2014. The motion included a chart of the interrogatories or requests for production plaintiffs believed defendants had not properly responded to, where in the record the court had ordered production of this material, and how defendants had failed to fully comply. The motion specifically requested sanctions pursuant to K.S.A. 2016 Supp. 60-237(b)(2)(C).

Attached to this motion were two emails from plaintiffs' counsel to McMaster dated February 20, 2014, and February 28, 2014. These emails informed McMaster that plaintiffs' counsel believed McMaster and defendants had not fully complied with court orders regarding discovery. One of these emails included the same chart plaintiffs included in the motion for sanctions. Furthermore, plaintiffs' counsel specifically told

40

McMaster they would seek sanctions pursuant to K.S.A. 60-237(b) if he did not comply with the court orders.

On April 10, 2014, McMaster filed a 170-page response to plaintiffs' motion. McMaster argued that he and defendants had complied with requests for information and documents regarding Justin's vehicles, cellphone, and time cards, insurance policies, and Birk Oil financial records. Of note, McMaster did not argue, as he later would, that defendants could not produce any of this information because Birk Oil Company no longer existed. McMaster also attached 11 exhibits, including multiple sets of interrogatories with answers and objections.

On April 14, 2014, the district court held a hearing regarding the sanctions. The court allowed McMaster to argue as to why he believed they had fully complied with the interrogatories and requests for production regarding Justin's vehicles, cellphone records, the insurance policies, lack of verification, and Birk Oil financial records.

As for the interrogatory regarding Justin's vehicles, McMaster explained they had complied with the court's orders because the court had only required them to supplement that information with the purchase date and who paid for the vehicles. After several more pages of discussion on the issue, McMaster started to explain that he had not provided information for vehicles Justin owned after the accident because the court's orders were not clear. At this point, the court cut him off saying, "We're done talking about this. . . . You filed a response[.] [W]e're done." McMaster claims the court did not allow him to explain why he and defendants did not comply with this order. In reality, though, the district court had already given McMaster two opportunities to defend himself and defendants on this issue.

While McMaster did not argue in his brief the district court did not afford him due process as to the second sanction, McMaster did receive notice and an opportunity

41

to present his case to the court. Plaintiffs filed a motion to compel answers to deposition questions and further relief on July 7, 2014. Plaintiffs did not specifically request sanctions pursuant to 60-237(b)(2)(C), but suggested further sanctions might be warranted. On July 22, 2014, plaintiffs filed a memorandum in support of their motion. Their memorandum requested specific sanctions, including sanctions pursuant to 60-237(b)(2)(C). In both their motion and memorandum, plaintiffs included allegations that McMaster had made misrepresentations to the court regarding Birk Oil's financial contributions to the Escalade. On August 4, 2014, McMaster filed a response to plaintiffs' motion, but he only addressed issues regarding Laura's deposition.

The district court held a hearing on August 22, 2014, to discuss plaintiffs' most recent motion. The court asked McMaster to address the answers he had provided regarding Birk Oil's treatment of the Escalade in financial records. McMaster claimed the answers were a result of miscommunication. McMaster then began to explain how plaintiffs had known at the time they filed their original petition that Birk Oil did not own the Escalade. The court stopped McMaster and redirected him to the issue of the interrogatory answers he had provided.

The district court and McMaster discussed the issue for several pages of the transcript. The court told McMaster that the answers to the interrogatory were false, and the court wanted to know if McMaster had lied or Laura had lied. McMaster told the court he did not agree that anyone had lied. The court then noted that McMaster had repeated the same information in the interrogatory answers to the court directly and asked if McMaster had supplemented his answers to the interrogatories. McMaster argued supplementation was not necessary. McMaster then asked if he could explain why the answers were the result of miscommunication, and the court told him no.

Later, McMaster asked if he could present argument, to which the district court responded, "I'll allow you to say whatever you want to at this point, but you're not going

to change my mind." McMaster reiterated his argument that his representations to the court had all been the result of miscommunication regarding the business entity being sued. As McMaster explained,

> "I represented to the Court that Birk Oil didn't have anything to do with contributions of gas or maintenance or anything to the Escalade. And yes that was followed up either before or after in a formal discovery response that was signed by Justin, Linda or Edward or all of them, but it was specifically pointed out that the answer was supplied by counsel and where the information was acquired from, so that there was no misunderstanding, no miscommunication and no reason to try to blame whatever on Justin, Linda or Edward having knowledge, et cetera.
>
> . . . .
>
> "Now Judge, mind you, had I known more information about what was going on, that interrogatory would not have been answered that way. There's no doubt about that. But that would require me to ask more questions and require different information, which didn't seem to be necessary under the circumstances.
>
> ". . . My clients are ordered to produce a bunch of records and they produce the records. And they produce the records without us going through them first. Which was another bone of contention at the time. So in fact the plaintiff's found out about fuel purchases for the Escalade before I did."

After finishing his explanation, McMaster continued to discuss the issue with the court, taking up five more pages of the transcript. Based on this record, McMaster had notice and a chance to present his case prior to the court's imposition of the second sanctions.

As part of his due process argument, McMaster also contends the district court erroneously set the amount of his first sanction for $2,500. According to McMaster, the district court set the amount of sanctions based on plaintiffs' counsel's expenses, but plaintiffs' counsel did not provide any evidence of the actual amount of expenses incurred. This court has previously upheld sanctions based on attorney fees as reasonable without reference to an affidavit or similar evidence. *New Discovery*

43

*Products, Inc. v. Flambeau Corp.*, 17 Kan. App. 2d 852, 860-61, 844 P.2d 768 (1993) (finding $5,000 sanction and $2,400 in attorney fees reasonable for discovery violations that delayed trial several days). More recently, though, the Kansas Supreme Court remanded a case to determine the amount of attorney fees imposed for a discovery violation when no affidavit of attorney fees was in the record. *Schoenholz v. Hinzman*, 295 Kan. 786, 802-03, 289 P.3d 1155 (2012). Thus, this case is remanded to redetermine the amount of sanctions based on an affidavit of attorney fees from plaintiffs' counsel.

*Did Substantial Competent Evidence Support the District Court's Fact Findings?*

McMaster also argues substantial competent evidence does not support the necessary fact findings to impose sanctions. A district court may abuse its discretion by basing its decision on a mistake of fact. We review a district court's factual findings for substantial competent evidence. *State v. Betancourt*, 301 Kan. 282, 297, 342 P.3d 916 (2015).

McMaster contends the record does not demonstrate he acted in bad faith. In imposing the first sanctions, however, the district court found otherwise. The court found the record did not justify McMaster's misinterpretations of its orders. The court noted the interrogatories were fairly straightforward and McMaster and defendants could have answered them relatively easily. Additionally, they had already held multiple hearings lasting several hours addressing all these issues. The court ultimately found McMaster had not acted in good faith.

The district court's finding regarding a lack of good faith seems to consider all the different orders with which McMaster and defendants had failed to comply. Even as to the interrogatory regarding Justin vehicles, though, substantial competent evidence supports this finding. As previously discussed, the court was clear McMaster and defendants needed to answer the interrogatory. The interrogatory was simple enough to

44

understand and required Justin only to report from his personal knowledge the vehicles he owned and the time periods he owned them. McMaster did not present any evidence to demonstrate the failure to comply was substantially justified.

As for the second sanction, McMaster argues substantial competent evidence does not demonstrate he misled the court about Birk Oil's financial contributions to the Escalade. Yet again, the record does not support McMaster's claims. McMaster argues that he made clear in his motion to dismiss and motion for relief regarding Birk Oil that it was a defunct entity. This is not true. He argued that Birk Oil should not be included as a defendant in the lawsuit, but for reasons other than that it was a defunct entity.

More importantly, McMaster made clear that he was the one who provided the answer to the interrogatories stating that there was no financial connection between Birk Oil and the Escalade. He repeated that answer orally to the court. That answer was demonstrably false, and the correct answer was easily attainable, as shown by the depositions of Justin, Linda, and Laura. Moreover, by McMaster's own admission, neither he nor anyone at Birk Oil had even looked at financial records prior to giving that answer. Therefore, substantial competent evidence supported the district court's finding that McMaster had misled the court.

*Did the District Court Impose Sanctions Based on Erroneous Legal Conclusions?*

McMaster also contends the district court erred in imposing sanctions because the court erroneously found certain information discoverable. A district court has broad discretion in supervising the course and scope of discovery. *Miller v. Johnson*, 295 Kan. 636, 687-88, 289 P.3d 1098 (2012). Under K.S.A. 60-226(b): "Parties may obtain discovery regarding any nonprivileged matter that is relevant to the subject matter involved in the action . . . . Relevant information need not be admissible at the trial if the

45

discovery appears reasonably calculated to lead to the discovery of admissible evidence."

McMaster focuses solely on discovery regarding vehicles Justin owned after the accident. Even if McMaster was justified in objecting to discovery on this issue, though, other discovery to which McMaster objected was dispositive in the case. The district court relied on evidence regarding Justin's cellphone and Birk Oil's financial contributions to the Escalade to determine that Birk Oil was liable for Justin's accident under a theory of respondeat superior. Thus, the district court did not base its sanctions on erroneous legal conclusions.

*Did the District Court Abuse its Discretion Because no Reasonable Person Would Sanction an Attorney for Believing and Zealously Representing His Clients?*

Finally, McMaster contends the district court abused its discretion in sanctioning him because he was only zealously representing his clients. As discussed above, however, the district court found that McMaster's actions went beyond simply representing his clients, and he could not explain away his actions by claiming he simply relied on his clients' representations. Thus, the district court did not err in imposing sanctions on McMaster.

In summary, the district court did not abuse its discretion in imposing sanctions on McMaster. K.S.A. 2016 Supp. 60-237(b)(2)(C) authorized the district court to sanction McMaster, and the record demonstrates McMaster misled the court regarding relevant evidence and delayed the proceedings for months. The amount of sanctions imposed, however, needs to be redetermined based on an affidavit of attorney fees or similar evidence.

*Is McMaster Entitled to Attorney Fees and Appellate Costs and Fees?*

McMaster filed a motion requesting attorney fees and appellate costs and fees. An appellate court has authority to award attorney fees under Supreme Court Rule 7.07(b) (2017 Kan. S. Ct. R. 50) on appeal in cases in which the district court had authority to award attorney fees. *Hodges v. Johnson*, 288 Kan. 56, 74, 199 P.3d 1251 (2009). McMaster has requested an award of attorney fees and costs under K.S.A. 60-237 and K.S.A. 60-211 for plaintiffs' alleged violations at trial and on appeal. We find the record does not support McMaster's allegations and deny his request for attorney fees.

Additionally, McMaster also seeks reimbursement for the original docket fee and the costs of transcripts pursuant to Supreme Court Rule 7.07(a)(5) (2017 Kan. S. Ct. R. 51), which states: "When a decision of the district court is reversed, the mandate will direct that appellant recover the original docket fee and expenses for transcripts, if any." In cases where the district court is not fully reversed, Rule 7.07(a)(5) does not apply. *Ruhland v. Elliott*, 302 Kan. 405, 419, 353 P.3d 1124 (2015). Because we have not fully reversed the district court, McMaster is not entitled to costs and fees under Rule 7.07(a)(5) and we deny this motion.

*Conclusion*

While McMaster was not required to file a motion to intervene in order to appeal the sanctions order against him, there was no rule preventing him from doing so. The motion tolled the time to file his notice of appeal, and thus his notice was still timely. Because he could not appeal the sanctions order until the underlying case reached final judgment, his motion to intervene was timely, and the district court should have granted the motion. The district court did not abuse its discretion in sanctioning McMaster, however, we are remanding the case to redetermine the amount of the sanctions imposed.

Affirmed in part, reversed in part, and remanded with directions.